## Wytheville.

WESSEL, DUVAL & COMPANY V. WINBORNE & COMPANY, INC.

June 12, 1919.

1. JUDGMENTS AND DECREES—*Personal Judgment Against Non-Residents — Reopening Case — Section 2986, Code of 1904— Case at Bar.*—In an action of assumpsit against non-residents, plaintiff, as ancillary to the action, sued out an attachment and had it levied on the effects of the defendants. Defendants entered no appearance, but filed a bond for the release of the attachment. The court entered a personal judgment against the defendants in favor of the plaintiff for the sum demanded in the declaration, with interest and costs. At a later date, defendants filed a petition in strict conformity with section 2986 of the Code of 1904. Defendants were never at any time prior to filing their petition served with process in the action or a copy of the attachment, nor did they appear or make any defense.

   *Held:* That if the judgment granted by the court against the defendants in the action of assumpsit was ever of any effect to fix a personal liability upon the defendants, it lost that effect upon the filing of defendants' petition, for the statute allows them to make defense against the judgment as if they had appeared in the case before the same was rendered. This can only mean that they were to be in no wise prejudiced by the judgment, but should occupy the same position as if no such judgment had been rendered.

2. JUDGMENTS AND DECREES — *Personal Judgment Against Non-Residents—Reopening Case—Section 2986, Code of 1904 — Case at Bar.*—If it could be allowed that a judgment by default could be entered in the clerk's office upon an order of publication in a case of this kind, all that the order showed was that the plaintiff was entitled to a recovery for some amount, which amount was to be thereafter assessed by a jury.

3. DEFAULT—*Damages—Necessity of Proof.*—In an action sounding in damages, if the defendant is served with process but fails to appear, he thereby admits that something is due; yet the

plaintiff, where the action is on an account, must prove his account or he shall recover but one cent damages.

4. JUDGMENTS AND DECREES—*Personal Judgment Against Non-Residents—Reopening Case—Section 2986, Code of 1904—Proof of Damages—Case at Bar.*—The instant case cannot be said to have stood in any better position than a case upon the writ of inquiry docket. It was necessary for the plaintiff to prove its case, or else be restricted to the recovery of merely nominal damages. This plaintiff failed to do. No evidence was introduced except a contract for the sale of forty tons of nitrate by defendants to plaintiff, and this contract expressly provided that in case of war endangering the transportation of nitrate the sellers had the right to cancel the contract, or upon agreement with the buyers to insure the same against war risk for account of buyers. This was, at an early stage, brought to the attention of the plaintiff, and it was notified that unless it agreed to pay the war risk insurance the contract would be canceled, and it insisted that the contract should be fulfilled, and, when it stated that it would only pay the war risk insurance under protest, the defendants promptly notified them that unless they agreed to pay without protest the defendants would exercise their right to cancel the contract.

5. PAYMENT—*Voluntary Payment—Protest—Case at Bar.*—In an action of assumpsit, it was stated in the brief of the defendant in error (plaintiff in the court below) that what it sought to recover was war risk insurance on four different lots of nitrate purchased of the defendants, which insurance it had paid in each case under protest; but there is no evidence in the record to show but one contract for the purchase of nitrate by the plaintiff of the defendants. Conceding to the plaintiff that it had the right to recover something, it was still incumbent upon the plaintiff to show the amount which it was entitled to recover, and this it failed to do, except in the instance mentioned. The amount paid for insurance on the contract given in evidence was $45.51. This the plaintiff, under the evidence, would have been entitled to recover if it had in fact been wrongfully demanded and paid under protest; but it sufficiently appears from the evidence that the payment was voluntary and not compulsory. It had the option to pay, or else have the contract rescinded, and it elected to make the payment. Such payment cannot be said to have been made under protest in a legal sense.

6. PAYMENT—*Voluntary Payment—Protest.*—Where a person, with full knowledge of the facts, voluntarily pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, it will not be considered as paid by

compulsion, and the party thus paying is not entitled to recover back the money paid, though he may have protested against the unfounded claim at the time of payment made.

Error to a judgment of the Circuit Court of city of Norfolk in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*E. R. Baird, Jr.,* for the plaintiffs in error.

*J. Edward Cole,* for the defendant in error.

BURKS, J., delivered the opinion of the court.

This was an action of assumpsit in which the declaration contained only a consolidated money count, wherein the plaintiff (defendant in error) claimed of the defendants (plaintiffs in error) $324.35 for money lent and advanced by the plaintiff to the defendants, and the like sum of $324.35 for money by the defendants had and received to and for the use of the plaintiff. No affidavit or account was filed with the declaration, nor were the defendants otherwise informed of the nature of the plaintiff's demand. The defendants were non-residents, and, as ancillary to the action, the plaintiff sued out an attachment and had it levied on effects of the defendants. The defendants entered no appearance, but filed a bond "for the release of the said attachment," and at the succeeding term, the court entered a *personal* judgment against the defendants in favor of the plaintiffs for $324.35, with interest and costs. At a later date of the term, the defendants, in strict conformity with section 2986 of the Code (1904), filed their petition in the cause, and made the requisite deposit for costs, and "were

admitted to make defense against the said judgment as if they had appeared in the cause before said judgment was rendered." Thereupon, the cause was continued "for hearing upon the merits" until the next term. At the next term, neither party introduced any witnesses, but the plaintiff introduced in evidence a written contract between the parties showing a sale, for future delivery, by the defendants to the plaintiff of forty tons of nitrate of soda, and a number of letters that had passed between them relating to sales of nitrate of soda by the defendants to the plaintiff. These letters showed that there were other contracts, besides the one offered in evidence, for the sale of nitrate of soda by the defendants to the plaintiff, and that in each instance the defendants were demanding and the plaintiff was paying under protest, one and one-half per cent of each bill for war risk insurance. What were the terms of the other contracts, does not appear from the record. The contract offered in evidence contains the following clause:

"In case of war endangering the transportation of nitrate of soda, sellers to have the right to cancel any part of this contract so affected, or, upon agreement with buyers, to insure same against war risk for account of buyers."

When complaint was first made of this charge, the defendants wrote the plaintiff:

"We clearly have the right to cancel the contract before taking any such action. We give you, as we give our other buyers, the privilege of paying war risk insurance, and, consequently, are delivering you the nitrate. If you do not wish to pay this insurance, we will consider not only this contract, but other contracts we have with you, as canceled. We are putting you on the same basis as our most favored buyers—even those who purchase in cargo lots—all of whom pay war risk insurance. We are constantly delivering nitrate to the very largest buyers in this country, and all pay this charge.

64

"Trusting this explanation is clear, and awaiting your immediate reply giving your decision, we are."

To this letter the plaintiff replied, under date May 31, 1917:

"Yours of the 20th inst. duly received. We recognize your right to call for an agreement from us to pay the actual war risk necessary on all future shipments to us under our contracts, and therefore agree to pay the same; but, as to shipments in transit, as to which we were not called upon for such an agreement, we will have to pay 'under protest,' if you insist, and with the understanding that we shall claim credit of you for the amount thereof."

On June 1, 1917, defendants wrote the plaintiff:

"We have your letter of the 31st ulto., which arrived just before the close of our office this afternoon, and which is not satisfactory. We beg to advise you that unless you agree to pay war risk without protest we shall exercise the right given us in the next to the last paragraph of the contract to cancel the contract. We should like you to telegraph us your decision tomorrow without fail."

On the next day the plaintiff wired the defendants as follows:

"Will pay all charges and risks for which contracts make us liable, but no more."

Following this telegram the plaintiff wrote the defendants on the same day, confirming its telegram of that date, and explaining its views of the contract. It insisted that "risks on shipments made to yourselves are entirely outside of our contracts, and we have no connection therewith." It also stated that it had made contracts based on its purchases from the defendants, and if they failed to make deliveries "we shall undoubtedly hold you responsible." The letter then concludes:

"If you differ with us in the construction of this contract we are perfectly willing to have the same construed for our

mutual benefit, and abide by the results. In the meantime, we wish it distinctly understood that we are willing, and do agree, to pay any increased risk that may be contemplated and embraced under our contracts, and having expressed our willingness to such agreement, you have no right nor pretext for canceling your contracts."

Upon this evidence the court entered the following judgment:

"The defendants having been heretofore admitted to make defense against the judgment entered herein as if they had appeared in this cause before said judgment was rendered, and having paid into court the estimated costs of this cause as required by an order entered herein on the 15th day of March, 1918, and neither party demanding a jury, the whole matter of law and fact was heard by the court, whereupon the court being of opinion that the plaintiff is entitled to recover a judgment against the defendants for the sum of three hundred and twenty-four dollars and thirty-five cents ($324.35), with interest from the 29th day of May, 1917, and costs, and therefore that the judgment heretofore rendered in favor of the plaintiff against the defendants for that sum should not be set aside, doth so adjudge." To this judgment defendants excepted.

The defendants were never at any time prior to filing their petition served with process in the action or a copy of the attachment, nor did they appear or make defense. They brought themselves squarely within the language of section 2986 of the Code (1904), which is as follows:

"If a defendant, against whom, on publication, judgment or decree is rendered under any such attachment, or his personal representative, shall return to or appear openly in this State, he may, within one year after a copy of such judgment or decree shall be served on him at the instance of the plaintiff, or within five years from the date of the decree or judgment if he be not so served, petition to have

the proceedings reheard. On giving security for costs, he shall be admitted to make defense against such judgment or decree, as if he appeared in the case before the same was rendered, except that the title of any *bona fide* purchaser to any property, real or personal, sold under such attachment, shall not be brought in question or impeached. But this section shall not apply to any case in which the petitioner, or his decedent, was served with a copy of the attachment, or with process in the suit wherein it was issued, more than sixty days before the date of the judgment or decree, or to any case in which he appeared and made defense."

[1-4]   If the judgment granted by the court against the defendants in the action of assumpsit were ever of any effect to fix a personal liability upon the defendants, it lost that effect upon the filing of defendants' petition, for the statute allows them to make defense against the judgment as if they had appeared in the case before the same was rendered. This can only mean that they were to be in no wise prejudiced by the judgment, but should occupy the same position as if no such judgment had been rendered. The most that can be claimed for it is that the case should stand on the court docket exactly as it did before the court executed the writ of enquiry in the first instance. If it could be allowed that a judgment by default could be entered in the clerk's office upon an order of publication in a case of this kind, all that the order showed was that the plaintiff was entitled to a recovery for some amount, which amount was to be thereafter assessed by a jury. In an action sounding in damages, if the defendant is served with process but fails to appear, he thereby admits that something is due; yet, the plaintiff, where the action is on an account, must prove his account or he shall recover but one cent damages. *Quarles' Adm'r* v. *Littlepage,* 2 Hen. & M. (12 Va.), at p. 405, 3 Am. Dec. 637. The case at bar, therefore, cannot be said to have stood in any better position than a case

upon the writ of enquiry docket. It was necessary for the plaintiff to prove its case, or else be restricted to the recovery of merely nominal damages. No evidence was offered in this case, and no contract for the sale of nitrate except the contract for forty tons, and this we have seen, expressly provided that in case of war endangering the transportation of nitrate, the sellers had the right to cancel the contract, or upon agreement with the buyers to insure the same against war risk for account of buyers. This was, at an early stage, brought to the attention of the plaintiff, and it was notified that unless it agreed to pay the war risk insurance the contract would be canceled, and it insisted that the contract should be fulfilled, and when it stated that it would only pay the war risk insurance under protest, the defendants promptly notified them that unless they agreed to pay without protest the defendants would exercise their right to cancel the contract. Some point was made by the plaintiff that it ought not to pay the insurance because the defendants had the fertilizer shipped to themselves, but this could not affect the right of the defendants to demand the premiums from the plaintiff if they chose to carry the risk themselves.

[5] . It is stated in the brief of the defendant in error (plaintiff in the court below) that what it sought to recover was war risk insurance on four different lots of nitrate purchased of the defendants, which insurance it had paid in each case under protest, but there is no evidence in the record to show but one contract for the purchase of nitrate by the plaintiff of the defendants. Conceding to the plaintiff that it had the right to recover something, it was still incumbent upon the plaintiff to show the amount which it was entitled to recover, and this it failed to do except in the instance mentioned. The amount paid for insurance on the contract given in evidence was $45.51. This the plaintiff, under the evidence, would have been entitled to recover if it had in fact been wrongfully demanded and paid under protest, but

it sufficiently appears from the evidence that the payment was voluntary and not compulsory. It had the option to pay or else have the contract rescinded, and it elected to make the payment. Such payment cannot be said to have been made under protest in a legal sense.

[6] "Where a person with full knowledge of the facts voluntarily pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, it will not be considered as paid by compulsion, and the party thus paying is not entitled to recover back the money paid, though he may have protested against the unfounded claim at the time of payment made. Where money has been paid under a mistake of the facts, or under circumstances of fraud or extortion, or as a necessary means to obtain the possession of goods wrongfully withheld from the party paying the money, an action may be maintained for the money wrongfully exacted. But such action is not maintainable in the naked case of a party making a payment of a demand rather than resort to litigation, and under the supposition that the claim, which subsequently turned out to be unauthorized by law, was enforcible against him or his property." *Lester* v. *Baltimore,* 29 Md. 415, 96 Am. Dec. 542; *Virginia Brewing Co.* v. *Commonwealth,* 113 Va. 145, 73 S. E. 454, and cases cited.

Upon the whole case we are of opinion that the judgment of the Circuit Court of the city of Norfolk should be reversed, and this court proceeding to enter such judgment as the trial court ought to have entered, will enter judgment for the plaintiff for one cent damages, and for the defendants for their costs both in this court and in the trial court.

*Reversed.*