Richmond

# CRITERION INSURANCE COMPANY
### v.
# ROBERT EARL FULGHAM

August 31, 1978.

Record No. 770360.

Present: All the Justices.

*J. Carroll Fears, Jr. (Taylor, Gustin, Harris, Fears & Davis*, on brief) for plaintiff in error.

*Sidney Sacks (Lewis, Sacks & DeLaura*, on brief) for defendant in error.

COMPTON, J., delivered the opinion of the Court.

In this appeal, the dispute stems from an insurance adjuster's misguided attempt to pay a claim for which there was no coverage under the policy.

The stipulated facts show that in July of 1975, plaintiff-appellee Robert Earl Fulgham was injured while operating the motorcycle of another along a street in Virginia Beach. The top of a large wooden crate fell from a truck causing the motorcycle to crash.

Fulgham was insured under a Family Combination Automobile Policy with Medical Payments Coverage issued by the appellant Criterion Insurance Company, the defendant below. He filed an appropriate claim in good faith with the insurer requesting payment of $1831.35 for medical expenses incurred as a result of the accident. Criterion's claims adjuster, "thinking only about the plaintiff's being involved in a vehicular accident and having Medical Payments Coverage," issued a draft in the foregoing amount in March of 1976 payable to plaintiff.

After plaintiff received the draft in the mail but before he attempted to negotiate it, the adjuster, having discovered the mistake, telephoned Fulgham advising him not to negotiate the draft, stating that the company would not honor it because the loss claimed was not covered under the policy.

Thereafter, this suit was instituted as an action in debt, the plaintiff demanding "the sum of $1831.35 due by draft issued by the defendant to the plaintiff in settlement of a medical payment loss in which payment of draft was stopped." Following consideration of the pleadings, exhibits, and the stipulation, the trial court in a written opinion found for the plaintiff in the demanded amount. We granted the insurer a writ of error to the February 1977 judgment order.

The parties stipulated that no coverage was afforded for this accident under the medical payments provisions of Criterion's policy. According to the trial judge's opinion, coverage was lacking because plaintiff was operating a motorcycle and because there was no contact between the truck and the motorcycle.

Plaintiff makes a two-pronged argument in support of the decision of the court below. First, he relies on § 8.3-802 of the Uniform Commercial Code and, second, he asserts "that the parties were involved in a mutual mistake of law for which no relief can be granted [the insurer]." We reject both contentions and reverse.

The first question is whether, under Code § 8.3-802, the drawer may be required to honor a draft issued by mistake and without consideration to the holder who is not a holder in due course. The plaintiff, without elaboration, relies on those portions of the section which provide that "where an instrument is taken for an underlying obligation. . .[i]f the instrument is dishonored action may be maintained on either the instrument or the obligation. . . ." He, also without supporting argument, points to that portion of the § 8.3-802 Official Comment 3 which states: "On dishonor of the instrument the holder is given his option to sue either on the instrument or on the underlying obligation." We do not agree with plaintiff's contention that the foregoing is authority for permitting a recovery against Criterion under the circumstances of this case.

Manifestly, as defendant argues, the statutory provisions merely afford the holder a choice of remedies, not an automatic right of recovery, if the commercial instrument is dishonored. The payee may sue either on the instrument or on the original obligation. *See Humble Oil & Refining Co. v. Copley*, 213 Va. 449, 450-51, 192

S.E.2d 735, 736 (1972). In addition, the section does not limit defenses available to the drawer in actions on commercial paper taken for underlying obligations. *But see* Code § 8.3-305.

Here, of course, the "instrument" was the draft specifically sued on and the "underlying obligation" arose from the insurance contract. Since there was no coverage under the policy for this claim, the insurer had no underlying obligation to Fulgham. Hence, the draft was without consideration. Under Code § 8.3-408, "[w]ant or failure of consideration is a defense as against any person not having the rights of a holder in due course. . . ." *See* Code § 8.3-306(c). Consequently, the insurer's defense of want of consideration was valid against Fulgham, who was not a holder in due course, and should have been sustained by the trial court.

The second question is whether the issuance of the draft under these circumstances was a mistake of law such as would permit recovery by the plaintiff. The trial judge, noting that the plaintiff made a full disclosure of the facts to the adjuster and that there was "not even a hint of fraud" on plaintiff's part, decided that in honoring the claim originally the insurer had made a mistake of law. The court relied on *Piedmont Trust Bank* v. *Aetna Casualty and Surety Co.*, 210 Va. 396, 171 S.E.2d 264 (1969), and *Newton* v. *Newton*, 202 Va. 515, 118 S.E.2d 656 (1961). The plaintiff urges that the trial court's ruling was plainly correct. We disagree.

Neither *Piedmont* nor *Newton* is controlling. In the former case, the administrator of the estates of three decedents killed in an automobile collision settled the claims with the primary insurer for reduced sums believing that uninsured motorists coverage could not be "stacked." This belief was based on the advice of counsel and others, relying in part on a federal court decision. About 15 months later, after the settlements had been consummated and the money paid, a decision of this court nullified the federal holding. In that decision, we determined that the uninsured motorist coverage, where multiple policies were involved, was cumulative instead of exclusive. Thereafter, the administrator brought suit attempting to set aside the settlements so that the claims could be pressed against additional potential coverage. We held that the trial court properly dismissed that action. Noting that every fact necessary to form a correct conclusion of law was

known to the adverse parties at the time of settlement, we said that relief would not be granted to the administrator because a mistake of law had been made.

In *Newton*, a divorced husband, under a court order for child support, sought to correct overpayments previously made by withholding sums later due under the order. We held that the attempted set-off was properly denied by the trial court in spite of the husband's claim that the overpayments were made by him mistakenly on an erroneous recollection of the terms of the parties' written agreement incorporated into the divorce decree. We said that when "one under a mistake of law but with full knowledge of all the facts, or with the means of such knowledge, and in the absence of fraud or improper conduct on the part of the payee, voluntarily and without compulsion pays money on a demand not legally enforceable against him, he cannot recover it." 202 Va. at 520, 118 S.E.2d at 659. We also said that "[a] mistake of law which precludes a recovery occurs when a person, with full knowledge of the facts, comes to an erroneous conclusion as to their legal effect." *Id.* We went on to point out that the husband was chargeable with knowledge of the terms of the agreement and decree, was represented by counsel and had easy access to the pertinent documents. Thus, we held that his ignorance of the actual terms of the documents was due to his own gross carelessness and would not sustain a recovery by him for the voluntary overpayments.

There are obvious factual differences between those cases and this, and we refuse plaintiff's invitation to mechanically apply here the general mistake-of-law rules set forth in *Piedmont* and *Newton*. To do so would work a plain injustice upon the insurer and would enrich the plaintiff unjustifiably. Fulgham did not rely to his detriment on the issuance of the draft; he did not change his position in any way as the result of the receipt of the draft. This was not the compromise of a disputed claim, nor was an accord and satisfaction involved. Through simple inadvertence and error in judgment, the defendant's agent promised to pay the full amount of the claim for medical expenses exactly as presented by the plaintiff, and promptly sought to correct the mistake which he had made.

In the process of determining whether a particular rule should be applied to a specific set of facts, the reasons underlying the rule should be examined, and when the reasons do not support its application, the rule will not be employed. This is such a case. One of the reasons usually given in support of the general rule that benefits conferred by a mistake of law, as contrasted with a mistake of facts, may not be recouped,* is that every person is presumed to know the law. But as one text-writer has pointed out, even though the maxim readily applies to one who attempts to escape a charge of murder on the ground he believed the act was permitted by law, the reason carries far less weight "when the issue is not obedience of law but unjust enrichment arising out of the misunderstanding of it." D. Dobbs, *Remedies* § 11.8, at 760-61 (1973). Another basis used by the courts in denying relief for mistake of law has been that it prevents uncertainty from arising as to one's future rights. It has been suggested, and here there is analogy to *Piedmont*, that this argument was advanced because of the possibility that even final judgments could be overturned if counsel later, as the basis for a motion for a new trial, presented a better and different legal argument than the one used at trial. *Id.* at 761. "But of course a case of mistake of law in a private transaction, as where one overpays a debt because he misinterprets his obligation to do so, is hardly comparable to a case of counsel's professional failure in litigation." *Id.; see Burton* v.

A further analysis of *Piedmont* and *Newton* will demonstrate the wisdom of applying the rule there and not applying it here. In *Piedmont*, rights of the parties had become fixed by a judgment confirming the settlement, the money had been paid, the judgments had been marked satisfied, and at least 15 months had passed before an attempt was made to rectify the mistake. And in *Newton*, the overpayments by the husband had been regarded as gratuities for the benefit of the child and had been spent. Furthermore, to allow the husband credit for those overpayments would

---

* Here, of course, the insurer is not attempting to recover a payment mistakenly made, but in order to view the plaintiff's argument in its strongest light, we will consider, in this case, the principle of law usually applied in cases where the insurer is trying to recover monies erroneously paid to an insured. *See* Annot. 167 A.L.R. 470.

have meant depriving the child of the full benefit of the court-ordered support money. 202 Va. at 519, 118 S.E.2d at 659. But in this case, none of those considerations is present. In *Piedmont* and *Newton*, the equitable mistake-of-law rule was employed to obtain just results. We will not blindly apply the same doctrine in this case when it means reaching a wholly inequitable result.

For these reasons, the judgment of the court below will be reversed and final judgment entered here for the insurer.

*Reversed and final judgment.*