VERNON M. WILLIAMS

V.

ERNEST C. CONSOLVO, ET AL.

Record No. 870423

April 21, 1989

Present: All the Justices

George H. Gray (*Outland, Gray, O'Keefe & Hubbard*, on brief), for appellant.

William T. Webb, Jr. (*Consolvo, Markowitz & Webb*, on brief), for appellees Ernest C. Consolvo and Carl S. Markowitz, Individually, etc.

Russell R. Stallard for appellee Hugh L. Stovall, Clerk, etc.

No briefs or arguments for appellees Gorin Felix Hatchett, Substitute Trustee and G & G Investment Company, Incorporated.

THOMAS, J., delivered the opinion of the Court.

In this appeal, we focus upon the aftermath of the misindexing of a deed of trust. On July 16, 1977, H. Thomas Altman and his wife, Patricia Altman (the Altmans), executed a deed of trust in which they conveyed certain property located in Norfolk, to Tucker St. Martin Coleman, trustee, to secure a $10,000 debt evidenced by a promissory note. On July 22, 1977, the deed of trust was delivered to the office of the Clerk of the Circuit Court of the City of Norfolk (Clerk), for recordation. It was properly recorded in the deed book; but it was *not* properly indexed.

Two years later, by deed of bargain and sale dated July 16, 1979, the Altmans, in consideration of $32,500, conveyed to Vernon M. Williams and his wife (hereinafter collectively Williams) the same property which was the subject of the 1977 deed of trust. The Altmans did not advise Williams of the existence of the deed of trust.

Williams was represented in the purchase of the property by the law firm of Ernest C. Consolvo and Carl S. Markowitz (the Consolvo Firm). The Consolvo Firm examined the title to the property. It found three prior deeds of trust; but it did not find the 1977 deed of trust which had been and, through the date of the title examination, remained improperly indexed. The 1979 deed of bargain and sale from the Altmans to Williams was recorded on July 17, 1979. The Consolvo Firm handled the closing on behalf of the Altmans as well as Williams.

The 1977 deed of trust remained misindexed until November 7, 1979. On that date, again unbeknownst to Williams, the Clerk properly indexed the deed of trust.

Williams did not learn about the existence of the deed of trust until he received a letter, dated November 29, 1979, from counsel for the noteholder. The letter stated that the note payments were in arrears and that foreclosure proceedings would be instituted unless arrangements were made to satisfy the outstanding debt. Williams advised the Consolvo Firm which, in turn, wrote to the Clerk notifying him of the misindexed deed of trust and demanding that the Clerk "discharge the lien and save [Williams] and the subject property harmless."

A series of communications ensued among counsel for the noteholder, the Clerk, counsel for the Altmans, and counsel for Williams. Although the noteholder threatened foreclosure, no such

proceedings were instituted from November 1979, through May 1984. Thus, for a period of approximately five years, Williams was aware that the noteholder contended Williams was responsible for paying off the lien. The last letter, in the record, written on Williams' behalf by the Consolvo Firm is dated June 9, 1982. It is to the Clerk, renewing the original demand that the Clerk "take steps to insure that the lien of the subject Deed of Trust is released of record and that [Williams] and the property be protected from the attempted foreclosure of the said Deed of Trust."

In late April or early May 1984, counsel for the noteholder gave notice of foreclosure concerning the property. The Consolvo Firm declined to represent Williams. At no time did the Consolvo Firm ever advise Williams that he was a bona fide purchaser for value, that the property was not subject to the lien of the deed of trust, that Williams did not have to protect himself from the foreclosure, or that Williams would be a volunteer if he made any payments or arrangements with the trustee to prevent the foreclosure. Nevertheless, during the time Williams was represented by the Consolvo Firm, he made no payments to the noteholder.

In response to the notice of foreclosure, Williams retained the law firm of Outland, Gray, O'Keefe & Hubbard. In a letter dated May 7, 1984, George H. Gray advised counsel for the noteholder that Williams had retained him "in connection with the notice of Trustee's Sale . . . of 7930 Bi County Road, Norfolk, Virginia on May 30, 1984." Gray requested a true copy of the note and an accounting of payments to enable Williams "to make arrangements for payment, either by making regular payments on the note or by some other means. He does not want a foreclosure sale." Gray wrote that after the information had been reviewed Gray would "discuss payment with" the noteholder's attorney.

The agreement reached between Williams and the noteholder was confirmed by letter dated May 31, 1984, from Gray to counsel for the noteholder. Gray wrote as follows:

> In consideration of your ceasing foreclosure proceedings with the sale set for May 30, 1984 and to prevent foreclosure, my client, Vernon M. Williams, will commence making payments of $200.00 plus interest on the unpaid balance each month until the liability of the attorney who examined the title for Mr. Williams and the liability of the Clerk of the Circuit Court of the City of Norfolk for faulty recordation of

the deed of trust have been determined, at which time, the entire balance will be due. I am to proceed with diligence in the litigation against the attorney and the Clerk.

On June 19, 1984, Williams filed a two-count motion for judgment against the Consolvo Firm and against the Clerk. The motion for judgment was amended twice. Ultimately, the allegation of negligence against the Consolvo Firm was that the firm negligently examined the title to the property and failed to advise Williams of the existence of a deed of trust; that the firm negligently failed to take effective steps to remedy its prior negligence; and that the firm negligently failed to advise Williams that if he made any payments to the noteholder he would be considered a volunteer. Williams alleged in count two of the motion for judgment that the Clerk was negligent in misindexing the deed of trust.

Pursuant to the agreement with the noteholder, Williams made payments from May 1984 through October 1985. By letter dated October 7, 1985, Gray advised counsel for the noteholder that after Gray had filed suit on Williams' behalf against the Clerk and the Consolvo Firm, he had been confronted with the defense that Williams "was a bona fide purchaser for value, that the property was not subject to the deed of trust which was recorded, but not properly indexed, and that Mr. Williams was a volunteer in making any payments." Gray advised the noteholder's counsel that he feared he may have given his client, Williams, "erroneous advice." Therefore, Gray advised Williams not to make any further payments until the matter was resolved. The noteholder then instituted foreclosure proceedings; Williams responded to that suit by seeking a permanent injunction against foreclosure. The matters were considered together by the trial court.

The trial court entered summary judgment in favor of the Consolvo Firm and the Clerk. In addition, the trial court permanently enjoined any effort by the noteholder to foreclose upon the lien of the misindexed deed of trust. In its judgment order, the trial court also made the following rulings:

1. that the Consolvo Firm was not negligent in examining the title to the land purchased by Williams;
2. that the Clerk was negligent as a matter of law in misindexing the deed of trust;

3. that Williams was a bona fide purchaser of the property for value;
4. that the payments made by Williams after foreclosure proceedings had begun were made as a volunteer; and
5. that Williams failed to prove that he sustained any damage.

On appeal, Williams makes four assignments of error. He contends the trial court erred in:

1. failing to decide whether the Consolvo Firm was negligent in not advising Williams that if he made payments on the note, he would be a volunteer;
2. ruling that Williams made payments as a volunteer;
3. ruling that Williams did not prove any damages; and
4. granting summary judgment in favor of defendants.

The principles concerning when payments are made as a volunteer have been well developed in Virginia case law at least since the early 19th century. *See Mayor &c. of Richmond* v. *Judah*, 32 Va. (5 Leigh) 331 (1834). Nevertheless, Williams, in discussing this issue, relies upon dictionary definitions and foreign authorities. We will dispose of the issue on the basis of Virginia law.

In *Wessel, D. & Co.* v. *Winborne & Co.*, 125 Va. 502, 510, 99 S.E. 719, 721 (1919), we wrote as follows:

> *Where a person with full knowledge of the facts voluntarily pays a demand unjustly made* upon him, though attempted or threatened to be enforced by proceedings, it will not be considered as paid by compulsion, and *the party thus paying is not entitled to recover back the money paid*, though he may have protested against the unfounded claim at the time of payment made. Where money has been paid under a mistake of the facts, or under circumstances of fraud or extortion, or as a necessary means to obtain the possession of goods wrongfully withheld from the party paying the money, an action may be maintained for the money wrongfully exacted. But *such action is not maintainable in the naked case of a party making a payment of a demand rather than resort to litigation*, and under the supposition that the claim, which subsequently turned out to be unauthorized by law, was enforceable against him or his property.

(Emphasis added.) *Accord Virginia Brewing Co.* v. *Common-wealth*, 113 Va. 145, 148, 73 S.E. 454, 456 (1912). *See Newton* v. *Newton*, 202 Va. 515, 520, 118 S.E.2d 656, 659 (1961); *Southern Biscuit Co.* v. *Lloyd*, 174 Va. 299, 314, 6 S.E.2d 601, 607 (1940). In *Newton*, we explained that "[a] mistake of law which precludes a recovery occurs when a person, with full knowledge of the facts, comes to an erroneous conclusion as to their legal effect." 202 Va. at 520, 118 S.E.2d at 659.

■ The circumstances in which this Court has permitted what might be described as exceptions to the general rule that payments made under a mistake of law are voluntary and not recoverable are decidedly few. In *Vick* v. *Siegel*, 191 Va. 731, 62 S.E.2d 899 (1951), a landowner whose property was subject to the lien of a deed of trust found a buyer for his property. The trustee under the deed of trust refused to release the lien unless the owner paid him a fee; this demand was unlawful. The owner paid the fee to the trustee; closed the sale with the buyer; then sued the trustee for the return of the fee. We held that a payment made under these circumstances was *not* voluntary because the seller "did not have time and opportunity to relieve himself from his predicament by *resorting to legal methods*. If he had done so he might have lost the sale of his property." *Id.* at 735-36, 62 S.E.2d at 901.

In the more recent case of *Criterion Ins. Co.* v. *Fulgham*, 219 Va. 294, 247 S.E.2d 404 (1978), we also held that a certain payment was *not* voluntary. There, Fulgham was injured while operating a motorcycle. He filed a claim with his insurance carrier for the payment of his medical expenses. The insurer's claims adjuster issued a check in the amount of Fulgham's claim. After the check arrived but before it was negotiated, the claims adjuster discovered that the items claimed by Fulgham were not covered by Fulgham's policy. The adjuster asked Fulgham not to negotiate the check; thereafter, a stop order was placed on the check. Fulgham sued, demanding payment of the amount he had claimed. We pointed out that the adjuster was a layman acting without advice of counsel; that he had acted inadvertently and based on an error in judgment; and that Fulgham would be unjustly enriched if allowed to keep the money. Under those circumstances, we said that we would not mechanically apply the rule of voluntariness based on mistake of law where to do so would lead to a "wholly inequitable result." *Id.* at 300, 247 S.E.2d at 408.

In this case, Williams knew all the facts. He made payments on the advice of counsel. He did not face the immediate loss of his property. He had ample opportunity to resort to litigation to test the validity of the noteholder's demand for payment. Indeed, what ultimately occurred is what could have occurred before any payments were made; that is, Williams could have presented the facts to the trial court in the foreclosure proceeding, upon proper pleadings, and secured a permanent injunction against foreclosure.

■ Nor do we perceive that applying the general rule will lead to a wholly inequitable result. There is no contention, for example, that the noteholder was unjustly enriched by receiving payments from Williams. Money was actually owed to the noteholder; the question was who was legally required to make those payments. Thus, unjust enrichment is not an issue in the instant appeal. Further, with regard to equities, it is significant that Williams does not here seek a return of the money from the person to whom it was paid. Instead, he seeks to recover, from either the Consolvo Firm or the Clerk, money equivalent to payments which Williams was not obliged to make when he did. As pointed out above, Williams had ample opportunity — without risking the loss of his property — to determine in court his obligation to pay the amounts claimed by the noteholder. Among Williams, the Consolvo Firm, and the Clerk, we do not perceive that it is wholly inequitable for Williams to be held responsible for his conduct in paying the noteholder. We hold that the trial court did not err in ruling that Williams was a volunteer in making payments to the noteholder.

■ Our conclusion with regard to the issue of voluntariness leads us to address briefly another assignment of error. Williams contends that the trial court erred in not ruling on the question whether the Consolvo Firm was negligent in not advising him that if he made any payments on the note he would be a volunteer. The thrust of this argument is that had the Consolvo Firm advised Williams in 1979 that he did not have to pay the noteholder, none of the later events would have transpired. Our response is twofold: First, Williams made no payments to the noteholder during the time he was represented by the Consolvo Firm. Thus, even if the firm should have advised him that he did not have to pay, he was not harmed by this lack of advice because, in fact, he made no payments. Second, when Williams secured new counsel to defend him from the threats of foreclosure, the Consolvo Firm was

no longer responsible for advising Williams about how to respond to those threats. That became the duty of the new lawyers. We hold then that the trial court did not err in refusing to rule on the question whether the Consolvo Firm was negligent in not telling Williams that making payments would render him a volunteer.

■ As discussed above, the payments Williams made to the noteholder were voluntary under well-settled principles of Virginia law. Consequently, those payments cannot be relied upon by Williams to prove damages against the Consolvo Firm and the Clerk. We hold, therefore, that the trial court correctly ruled that Williams could not prove damages and that both the Consolvo Firm and the Clerk were entitled to summary judgment. In light of all the foregoing, we will affirm the judgment of the trial court.

*Affirmed.*

STEPHENSON, J., with whom RUSSELL and WHITING, JJ., join, concurring in part and dissenting in part.

I agree that Williams is a volunteer. Thus, I also would affirm the judgment in favor of the Clerk.

I reach an opposite result, however, in the legal malpractice action. In that action, Williams alleged, *inter alia*, that the Consolvo Firm failed to advise him that he would be a volunteer if he made payments to the Altmans. Whether the Consolvo Firm violated the appropriate standard of care and thereby damaged Williams are factual issues which cannot be resolved by a court without considering expert testimony.

I believe, therefore, that the trial court erred in granting summary judgment in favor of the Consolvo Firm. Accordingly, I would reverse the judgment as it relates to the Consolvo Firm and remand the malpractice action for a trial on the merits.