# CIRCUIT COURT OF FAIRFAX COUNTY

David C. Lamont
and Monica R. Lamont

v.

David W. Seabury,
Patricia J. Seabury,
and Maureen E. McGinn

March 18, 2004

Case No. (Chancery) C151356

BY JUDGE ARTHUR B. VIEREGG

The captioned cause was tried before me *ore tenus* on February 25 and 26, 2004. After all the evidence was presented, I took the matter under advisement. I am now prepared to rule.

## I. *Summary of the Facts*

The Complainants, David C. Lamont and Monica R. Lamont, purchased a home in Annandale, Fairfax County, Virginia, on or about September 2, 1980, from Defendant Maureen E. McGinn. As consideration for their acquisition, the Lamonts agreed to assume and hold McGinn harmless for the payment of a purchase money note, secured by a deed of trust, payable to Defendants, David W. Seabury and Patricia J. Seabury.

The McGinn note included the following payment provisions:

FOR VALUE RECEIVED, the undersigned promise(s) to pay to DAVID W. SEABURY and PATRICIA J. SEABURY ... the principal sum of SIXTY SEVEN THOUSAND, FIVE HUNDRED ... DOLLARS ($67,500), with interest from date at the rate of eight & one half per centum (8.5%) per annum on the unpaid balance until paid. The said principal and interest shall be payable ... in monthly installments of at least five hundred, nineteen and 03/100 Dollars ($519.03), commencing on the first day of August 1978, and continuing on the first day of each month thereafter until this note is fully paid, except that, if not sooner paid, the entire indebtedness shall be due and payable on the first day of July 2008.

Privilege is reserved to prepay at any time, without premium or fee, the entire indebtedness or any part thereof, not less than the amount of one installment, or one hundred dollars ($100.00), whichever is less. Prepayment in full shall be credited on the date received. Partial prepayment, other than on an installment due date, need not be credited until the next following installment due date or thirty days after such prepayment, whichever is earlier; provided, however, that in no event may this load be prepaid, in part or in full, before January 1, 1979.

Comp. Ex. 2. The deed of trust securing the McGinn note included the aforementioned payment provisions set forth in the first of the two paragraphs quoted above. In addition, the deed of trust provided for a late payment penalty if any payment, including principal, interest, taxes, or insurance were paid more than fifteen days after the due date. Def. Ex. 2.

The evidence at trial demonstrated that after the Lamonts acquired the McGinn property, the Seaburys and the Lamonts had numerous dealings related to late payments and an escrow required by the Seaburys for payment of insurance and taxes. In some cases, the Lamonts were late in making payments for various reasons explained at trial. As a consequence, they made payments in excess of those due under the note and deed of trust. In some cases, they made payments they deemed in excess of those due, which they paid under protest. *See e.g.* Compl. Ex. 12 (October 28, 1986, letter and check indicating that the amount of $913.88 was being paid under protest). At one point, the Seaburys attempted to accelerate the note and foreclose upon the property for failure to pay taxes and insurance. The Honorable Richard J. Jamborsky of this Court permanently enjoined the foreclosure. *See, Lamont v. Ronald P. Maddox et al.*, Chancery No. 103951. At trial, I took judicial notice of the pleadings and contents of both Chancery

No. 103951 and Law No. 151020. Both files should accordingly be made a part of the court file for the captioned case in all subsequent trial or appellate proceedings.

On account of marital difficulties, on or about March 31, 1994, Complainant David C. Lamont conveyed his interest in the McGinn property to his wife, Complainant Monica R. Lamont. In order to finalize the transaction, the Seaburys demanded that the Lamonts make additional payments of principal and interest, taxes and insurance, and attorney's fees, which David Lamont contends were not owed. Although he contends he paid those amounts under protest, no document evinced that those payments were made under protest.

Later, on or about March 27, 1997, Monica R. Lamont refinanced the Seabury loan encumbering the property. She alleges she paid $7,579.01 under protest at that time in principal, late charges, and attorney's fees, and that she was denied a refund for insurance paid of $298. Monica Lamont introduced no document demonstrating that the amounts paid the Seaburys were paid under protest. At the time of the refinancing, no steps had been taken by the Seaburys to accelerate the loan or foreclose upon it.

On March 26, 1996, David Lamont filed a law action to obtain relief for payments made in connection with the sale of his interest in the McGinn property to his wife. *David C. Lamont v. David W. Seabury et al.*, Law No. 151020. In that action, I granted a motion for summary judgment dismissing the action without prejudice. That decision was not appealed and is the law of the case. This cause followed.

## II. *Position of the Parties*

At trial, the Seaburys contended that they were not in privity with the Lamonts and accordingly that the Lamonts did not have standing to recover overpayments made in connection with the McGinn note.[1] The Seaburys

---

[1] While this issue was not specifically raised by the parties, the 1994 transfer of David C. Lamont's interest to his wife pursuant to their settlement agreement raises a possible question of his standing. It is not clear from the record whether Monica R. Lamont assumed his obligation under the note or not. Thus, because the record does not document the terms as to David C. Lamont's obligations with respect to payment of the Seabury note after the 1994 conveyance to his wife, it is assumed he continued to be liable for payment of the McGinn note as an assumption obligor, *see Hofheimer v. Booker*, 164 Va. 358, 180 S.E. 145 (1935), (discussed more fully *infra*) and therefore continued to have standing. Irrespective of this issue, my finding with respect to the voluntary payment issue renders the standing question moot, because even assuming David C. Lamont has standing to challenge the note, no evidence indicated that he was compelled to make the 1994 payments.

additionally contended that the statute of limitations barred claims for any of the overpayments made beyond three years of the Lamonts filing of Law No. 151020. *See,* Va. Code Ann. § 8.01-246(4).

The Lamonts contended they have standing to sue the Seaburys for overpayments pursuant to the note either because (1) by assuming the McGinn note, they impliedly were in privity with the Seaburys for payment of the note; or (2) because the Seaburys otherwise would be unjustly enriched. The Lamonts further asserted that the note provided that overpayments should be deemed prepayments of principal in accordance with the McGinn note prepayment provisions.

The Lamonts further contend that the payments made during the course of the note were involuntary payments made under protest. The Seaburys respond that payments made by the Lamonts were voluntary payments and, therefore, the Lamonts are barred from obtaining relief for prior payments made either at the time of the 1997 refinancing or earlier.

### III. *Analysis of the Parties' Contentions*

#### A. *The Privity Issue*

Both parties relied upon *Hofheimer v. Booker,* 164 Va. 358, 180 S.E. 145 (1935), in which the Virginia Supreme Court addressed the relationship between a mortgagee and the purchaser of the mortgaged property, who had assumed payment of the mortgage as consideration for his purchase. The Court declared:

> It is well settled that a grantee of mortgaged premises, who has purchased subject to a mortgage for which his grantee was primarily liable, and has assumed the payment of the mortgage debt as a part of the consideration, renders himself personally liable for the discharge of the debt, *not only to the mortgagor but also directly to the mortgagee, on the ground that, as between the parties to the deed, the grantee thereby becomes the principal debtor for the mortgage debt, and the grantor is thenceforth merely a surety for the debt. And where there are successive grantees of the mortgaged premises, each assuming payment of the mortgage debt, the mortgagee may hold either or all of the grantees for the debt.*

*Id.* at 364 (emphasis added) (citations omitted).[2] Although the above is *dicta*, it is plain that *Hofheimer* demonstrates that a mortgagee has a direct cause of action against a party assuming the maker's obligation to pay the mortgage debt. The necessary implication of *Hofheimer* is that an implied contractual relationship arises between the mortgagee and the assuming obligor. Under well settled principles of mutuality,[3] such an assuming obligor may sue the mortgagee to obtain relief arising out of that implied contractual relationship. Examples of such suits would include a suit to enjoin foreclosure or, as is more relevant here, to recover mortgage payments involuntarily made.

For the reasons set forth above, the Seaburys' defense that the Lamonts do not have standing to seek damages in the amount of involuntary payments made is without merit.

## B. *The Prepayment Issue*

The Lamonts next contend that the payments made by them at various times during the life of the McGinn note, if not due when made, constituted prepayments of principal for which they should have been accorded credit by the Seaburys. The explicit terms of the note and deed of trust sustain that position, at least if the prepayments exceeded $100. The Lamonts called an accountancy expert, who reviewed payments made during the life of the note, and testified credibly that, when previous prepayments of principal are considered, Monica Lamont overpaid the McGinn note balance at the settlement of her 1997 refinancing of the Seabury mortgage.

Although the Lamonts' position appears sound that earlier overpayments made to the Seaburys should have been applied to unpaid principal, it does not necessarily follow that those payments entitled the Lamonts, or either of them, to recover those payments in this proceeding. That issue depends upon whether or not the payments made by the Lamonts constituted voluntary or involuntary payments, an issue that will be addressed later in this letter opinion.

---

[2] The trial court had found the creditor was barred from seeking a judgment against the original maker of the note because the creditor had afforded the grantee assuming the payment of the indebtedness an extension of time to pay the note, thereby releasing the original maker, who had become a surety by virtue of the assumption. *Hofheimer*, 164 Va. at 366-68.

[3] *See C. G. Blake Co. v. W. R. Smith & Son, Ltd.*, 147 Va. 960, 971-72, 133 S.E. 685 (1926) (discussing the principle of mutuality of obligation under a contract).

## C. *The Statute of Limitations Issue*

The limitations period for non-payment of an installment contract begins to run at the time each installment comes due. *See Williams v. Matthews,* 103 Va. 180, 48 S.E. 861 (1904); *Jones v. Morris Plan Bank of Portsmouth,* 168 Va. 284, 191 S.E. 608 (1937) (recognizing the divisibility of payments under installment contracts and separate actions accruing as each falls due). The same period presumably would apply to recover overpayments, although no authority for this principle was advanced by the parties. This assumption was conceded by counsel for both the Seaburys and the Lamonts, as they argued at the hearing that the filing of the motion for judgment in March 1996 and the subsequent filing the bill of complaint in the instant matter in September 1997, tolled the running of the three year statute of limitations for breach of an unwritten or implied contract. Therefore, David C. Lamont's claim for payments made when he conveyed his interest in the McGinn property in March 1994 was not barred. Nor were Monica R. Lamont's claims for payments barred, as she filed this suit within the three years from the March 1997 refinancing. Thus, if those payments are deemed prepayments under the note and if they are deemed involuntary payments, the statute of limitations bars neither Complainant's claim for involuntary overpayments.

## D. *The Involuntary Payment Issue*

The Lamonts maintain in this cause that they are entitled to recover payments wrongfully demanded by the Seaburys both at the time of the 1994 conveyance of David C. Lamont's interest to his wife and at the time of Monica R. Lamont's refinancing of the Seabury mortgage. They principally contend that the amounts demanded were not owed either because the attorney's fees demanded were not owed or because the balances claimed for principal, interest, taxes, and insurance were over-stated. They contend, moreover, that their payments were made under protest and, inferentially, that the payments demanded and paid by them, therefore, were involuntary payments.

Virginia law, however, precludes a party from recovering voluntary payments even though made under protest. *See Newton v. Newton,* 202 Va. 515, 520, 118 S.E.2d 656 (1961); *Mayor etc. of Richmond v. Judah,* 32 Va. (5 Leigh) 305 (1834). The proposition is stated well in *Williams v. Consolvo,* 237 Va. 608, 613, 379 S.E.2d 333 (1989) (*quoting Wessel, Duval & Co. v. Winborne & Co.,* 125 Va. 502, 510, 99 S.E. 719 (1919)):

> *Where a person with full knowledge of the facts voluntarily pays a demand unjustly made* upon him, though attempted or threatened to be enforced by proceedings, it will not be considered as paid by compulsion, and *the party thus paying is not entitled to recovery back the money paid*, though he may have protested against the unfounded claim at the time of payment made.

(Italics in original, underlining added.) Moreover, as the Virginia Supreme Court noted in *Consolvo*, exceptions to the voluntary payment rule are few and involve situations where payment is demanded upon threat of immediate loss of the property. *Consolvo*, 237 Va. at 615. But, where a party is not faced with such imminent consequences and the party seeking to reclaim the payment has made the payment with full knowledge of the facts, Virginia considers such payments to be voluntary and unrecoverable in a later lawsuit. *Id.* at 616.

In the case before me, both David C. Lamont and Monica R. Lamont fully knew the facts related to their liability for payments pursuant to the McGinn note. Indeed, each of their claims related to prepayments made years before the refinancing. Regarding the payments related to the 1994 conveyance of David C. Lamont to Monica Lamont, there is no evidence of compulsion on the part of the Seaburys. In fact, the 1994 transaction occurred in the context of a marital dispute between the Lamonts, absent any imminent foreclosure or other adverse circumstance created by the Seaburys. Nor was Monica R. Lamont under any pressure to refinance the Seabury loan in March 1997. The record did not demonstrate any exigent circumstance necessitating the refinancing of the Seabury note. Prior to effectuating the refinancing, Monica R. Lamont might have filed suit to vindicate her rights but elected not to do so. Under such circumstances, she is barred from later challenging the payments made by her.

In one of the few cases in which the Virginia Supreme Court has denied a party recourse to recover voluntary payments on equitable grounds, *Criterion Ins. Co. v. Fulgham*, 219 Va. 294, 247 S.E.2d 404 (1978), the Court was confronted by a situation in which an insurance company erroneously made a payment of a claim on account of a mistake of law, the coverage *vel non* as to the injuries sustained. The Company immediately stopped payment on the check. In such circumstances where the proceeds were never received, the Court upheld the insurance company's position. However, the circumstances plainly are distinguishable from those before me. Indeed, if this court were to credit the Lamonts' overpayment claim, it would vitiate the voluntary payment doctrine. Any payment made might later be a predicate for a lawsuit upon the reasoning that the payment was not owed.

250

## IV. *Conclusion*

In view of my findings and views set forth above, I conclude that the Lamonts' bill of complaint must be dismissed with prejudice.