JUSTICE KELSEY, with whom JUSTICE GOODWYN joins, dissenting.
Nationwide's argument suffers from a fatal conceptual flaw. Erie's alleged breach of its duty to equitably contribute to the $2.9 million settlement occurred nearly three years before Erie had any legal duty to contribute.[1] At the time that Nationwide settled the tort claim, Erie had no coverage liability for the first $3 million. A circuit court had so held. At that time, Erie legally occupied the role of excess insurer, and Nationwide was the primary insurer. Absent an agreement to the contrary, a primary insurer cannot assert equitable contribution against an excess insurer[2] because the two do not have a concurrent, common obligation under their respective insurance policies.[3]
Equitable contribution benefits a claimant "who pays a debt that is concurrently owed *736 by another." 2 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 10:1, at 10-2 (6th ed. 2013) (emphasis added). That is to say, "the payment must have been made upon a debt for which the defendant was legally liable at the time of the payment. " Turner's Adm'r v. Thom , 89 Va. 745, 747, 17 S.E. 323 (1893) (emphasis added); see Great Am. W., Inc. v. Safeco Ins. , 226 Cal.App.3d 1145, 277 Cal. Rptr. 349, 353 (1991) (concluding that the settling insurer's "claim for contribution and/or indemnity never came into existence because at the time it paid the [insured's] claim, [the nonsettling insurer] was no longer under any contractual obligation to cover the loss" (emphasis added)); Peterson v. Nichols , 71 Wash. 656, 129 P. 373, 374 (1913) ("The party from whom contribution is demanded must have been under a legal obligation to pay at the time the payment was made by those who demand the contribution." (citing, inter alia , our opinion in Thom )).
This rule of concurrence is an equitable principle with historic provenance. See 2 Fred F. Lawrence, A Treatise on the Substantive Law of Equity Jurisprudence § 743, at 829 (1929) (recognizing that the equitable right of contribution "is not available when the obligation discharged is not binding on the defendant at the time of payment " (emphasis added)); cf. 2 Joseph Story, Commentaries on Equity Jurisprudence as Administered in England and America § 671, at 82-83 (W.H. Lyon, Jr. ed., 14th ed. 1918) ("In order for the surety to recover his ratable part from a co-surety, it is necessary for him to show that the debt that he has discharged was a binding and subsisting obligation for which he was jointly liable with his co-surety, and if he pays a debt for which the co-surety was not liable ... he is not entitled to contribution from his co-surety.").
In the insurance context, the "theory" behind equitable contribution is that the party seeking it has paid more than its "proportionate share" of a debt that "was equally and concurrently owed by the other insurers." Fireman's Fund Ins. v. Maryland Cas. Co. , 65 Cal.App.4th 1279, 77 Cal. Rptr. 2d 296, 303 (1998) (emphases in original).[4] If the debt at the time of payment was not concurrently owed, there can be no equitable contribution. See Thom , 89 Va. at 747, 17 S.E. 323. "In deciding whether one insurer is liable for equitable contribution to another, the inquiry is whether the nonparticipating coinsurer 'had a legal obligation to provide a defense or indemnity coverage for the claim or action prior to the date of settlement. ' " Mutual of Enumclaw Ins. v. USF Ins. , 164 Wash.2d 411, 191 P.3d 866, 872-73 (2008) (en banc) (emphases in original) (alterations and citation omitted); see also Safeco Ins. of Am. v. Superior Court , 140 Cal.App.4th 874, 44 Cal. Rptr. 3d 841, 844-45 (2006) ; David E. Bordon & Ellen B. Van Vechten, Directors' and Officers' Liability Insurance , in 4 Law and Practice of Insurance Coverage Litigation § 47:43, at 179 (David L. Leitner et al. eds., Supp. 2018).
Nationwide tries to work around this problem by reminding us that we reversed the circuit court's ruling. We did, to be sure. Nationwide, however, had voluntarily made the settlement payment before we reversed the circuit court's judgment. The truism, timing is everything, is true here as it is in so many other contexts. A judgment on appeal is the law of the case unless and until it is either stayed or suspended or, if neither, overruled by the higher court. Until then, the final judgment binds the litigants with the force of law - thereby creating legal rights and defenses that can be exercised at any time up until that judgment is set aside. The parties have a legal right, as well as a legal duty, to rely upon the lower court's judgment during this interim period. See generally Aldous v. Darwin Nat'l Assurance Co. , 851 F.3d 473, 486 (5th Cir. 2017) (holding that, "if an insurance company disputes coverage with its insured but nonetheless settles the action on the insured's behalf, there is no right to *737 equitable reimbursement if the third party's claims are later determined to be uncovered by the policy"), vacated in part on other grounds on reh'g , 889 F.3d 798 (5th Cir. 2018).
Consider the situation in which a lower court orders a civil defendant to pay a monetary award, and then that defendant appeals. If the defendant pays the award without seeking a stay of the judgment, no action of the appellate court can undo that voluntary payment. To be sure, "the voluntary payment of a judgment deprives the payor of the right of appeal." Citizens Bank & Tr. Co. v. Crewe Factory Sales Corp. , 254 Va. 355, 355, 492 S.E.2d 826 (1997) ; see also Carlucci v. Duck's Real Estate, Inc. , 220 Va. 164, 166, 257 S.E.2d 763 (1979). Why? Because a judgment issued by a court of competent jurisdiction - whether the lowest court or the highest - defines the legal rights and liabilities of the litigant while that judgment remains in place. If litigants must obey such judgments on appeal, they may also rely upon them. Cf. Bamberger v. Marsh USA, Inc. , 699 Fed. Appx. 649, 651 (9th Cir. 2017) (stating that the insurer "could reasonably rely on the summary judgment ruling to justify its subsequent non-contribution" to the settlement).
In this case, a court of competent jurisdiction held that Erie occupied the status of an excess insurer. Nationwide did not request or obtain a stay of that judgment. As a matter of law, Erie had no duty to equitably contribute to Nationwide's settlement of the tort claim. At that time, Nationwide and Erie did not share a common obligation because the former had been adjudicated to be a primary insurer and the latter an excess insurer. See Safeco Ins. of Am. , 44 Cal. Rptr. 3d at 844-45 (stating that the nonparticipating coinsurer must have "had a legal obligation ... prior to [the date of settlement]" (alterations and emphasis in original) (citations omitted)); see, e.g. , Mutual of Enumclaw Ins. , 191 P.3d at 874 (rejecting a claimed "right to equitable contribution" because the defendant insurer "had no legal obligation to defend or indemnify [the insured] at the time of the settlement"). It was at the time that Nationwide paid the settlement - not when we issued our ruling on appeal nearly three years later - that the cause of action for equitable contribution either arose or did not arise.
I am not saying that the duty and breach sequence could never have concurrently occurred. If, for example, Nationwide were to have paid the settlement after we had vacated the circuit court's initial judgment, the date of Erie's breach would have occurred after the duty to contribute arose. Similarly, if Nationwide were to have paid the settlement proceeds before the circuit court adjudicated Nationwide as the sole, primary insurer, the circuit court could have awarded an equitable contribution claim (assuming timely notice and tender) because, at the time of the settlement, no judicial adjudication of the insurers' respective roles had taken place. See, e.g. , American Family Mut. Ins. v. Regent Ins. , 288 Neb. 25, 846 N.W.2d 170, 193-95 (2014) (justifying an award of equitable contribution in part by analyzing on appeal which policies were primary and which were excess).
In sum, no "common obligation" concurrently existed in law at the time of Nationwide's voluntary settlement. At that time, an insurer previously adjudicated to be primary was asserting an equitable contribution claim against an insurer adjudicated to be excess.[5] Erie did not breach its duty to contribute because, at the time of the settlement, it had no such duty as a matter of law. Our reversal of the circuit court's final judgment did not create a duty ex post facto that had not existed at the time of the alleged breach.[6]
I respectfully dissent.

A cause of action for equitable contribution accrues when the party seeking contribution pays or discharges the jointly owed, concurrent obligation, unless that party brings a "third-party claim permitted by subsection A of § 8.01-281 and the Rules of Court," Code § 8.01-249(5). See Graham v. Community Mgmt. Corp. , 294 Va. 222, 228 & n.3, 805 S.E.2d 240 (2017) (stating in dicta that "a defendant may bring a claim for indemnification or contribution before she is held liable or required to pay a claim" and referencing Rule 3:13); Hensel Phelps Constr. Co. v. Thompson Masonry Contractor, Inc. , 292 Va. 695, 704, 791 S.E.2d 734 (2016) ("Code § 8.01-249(5) states that, '[i]n actions for contribution or indemnification,' the action shall be deemed to accrue when 'the contributee or the indemnitee has paid or discharged the obligation.' "); Kent Sinclair, Sinclair on Virginia Remedies § 11-6, at 11-15 to -16 (5th ed. 2016); Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 4.9[I], at 472 (6th ed. 2014).

See generally 22 Eric Mills Holmes, Holmes' Appleman on Insurance 2d § 141.8[B], at 459 (2003) ("In the absence of an agreement ... there is no contribution between a primary and an excess carrier."); 15 Steven Plitt et al., Couch on Insurance 3d § 218:7, at 218-12 to -13 (2005) ("As a rule, an insurer which is primarily responsible for a loss has no right of contribution from another insurer whose liability is only secondary."). Put another way, "because the primary and the excess policies are not considered to insure exactly the same 'risk' (e.g. , they insure different layers of risk), the principle of equitable contribution has been held not to apply to a primary vs. excess insurer dispute." 13 John T. Harding & Rachel M. Davison, New Appleman on Insurance Law Library Edition § 166.03[3], at 166-9 to -10 (Jeffrey E. Thomas & Francis J. Mootz, III eds., 2009).

See, e.g. , Great W. Cas. Co. v. Canal Ins. , 901 F.2d 1525, 1527 (10th Cir. 1990) ; Scottsdale Ins. v. Essex Ins. , 98 Cal.App.4th 86, 119 Cal. Rptr. 2d 62, 67 (2002) ; Home Ins. v. Cincinnati Ins. , 213 Ill.2d 307, 290 Ill.Dec. 218, 821 N.E.2d 269, 276 (2004) ; American Family Mut. Ins. v. Regent Ins. , 288 Neb. 25, 846 N.W.2d 170, 193 (2014) ; United States Fid. & Guar. Co. v. Federated Rural Elec. Ins. , 37 P.3d 828, 832 (Okla. 2001) ; National Farmers Union Prop. & Cas. Co. v. Farm & City Ins. , 689 N.W.2d 619, 625 n.2 (S.D. 2004).

See also Hartford Cas. Ins. v. Trinity Universal Ins. of Kansas , 158 F. Supp. 3d 1183, 1201 (D.N.M. 2015) ; Randall L. Smith & Fred A. Simpson, Excess Other Insurance Clauses and Contractual Indemnity Agreements Shifting an Entire Loss to a Particular Insurer , 30 T. Marshall L. Rev. 215, 219 (2004) (citing United States Fire Ins. v. Stricklin , 556 S.W.2d 575, 578 (Tex. Civ. App. 1977) ).

See Signal Cos. v. Harbor Ins. , 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889, 894 (1980) (stating that, "even though the claim against the insured may be for a sum in excess of the primary coverage, the primary insurer ... may not seek contribution from the excess carrier even though its successful settlement ... relieves the excess insurer from indemnifying the injured party").

I am unconvinced by the majority's effort to distinguish Allstate Insurance v. United Services Automobile Ass'n , 249 Va. 9, 452 S.E.2d 859 (1995). See ante at 734. My concurrent-duty analysis, however, renders it unnecessary to address the conditions-precedent argument advocated by Erie. I am similarly unpersuaded by the majority's reliance on Williams v. Consolvo , 237 Va. 608, 379 S.E.2d 333 (1989). See ante at 733-34. That case has nothing to do with equitable contribution. Williams addresses the situation where a party alleging negligence sought indemnity for an illegitimate payment made under a mistake of law. Our case, however, involves equitable contribution, which necessarily presupposes a legitimate payment made by one unmistakably legally liable to make the payment. Moreover, Williams says that a voluntary payor operating under a mistake of law cannot obtain relief without proving a "wholly inequitable result," a narrow exception supported by "decidedly few" Virginia cases. 237 Va. at 614, 379 S.E.2d 333 (citation omitted). Yet, even a cursory comparison of those "decidedly few" cases applying the wholly inequitable exception (Williams not being one of them) shows that Nationwide - a sophisticated insurance carrier represented by experienced legal counsel - can hardly claim that its decision to end the tort case with a purely voluntary settlement resulted in a wholly inequitable result. What possibly could be wholly inequitable (or, for that matter, inequitable at all) about an insurance company settling a case within its policy limits after being adjudicated to have sole coverage and having to pay the agreed-upon settlement amount?