ALLSTATE INSURANCE COMPANY

V.

UNITED SERVICES AUTOMOBILE ASSOCIATION

Record No. 940300

January 13, 1995

Present: All the Justices

*Allan S. Reynolds, Sr. (Reynolds, Smith & Winters*, on briefs), for appellant.

*Timothy M. Richardson (Glen A. Huff; Huff, Poole & Mahoney*, on brief), for appellee.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

The question for decision in this case is whether the trial court erred in holding that United Services Automobile Association (USAA) was entitled to contribution from Allstate Insurance Company (Allstate) as a result of USAA's settlement of a claim for wrongful death brought against an insured under policies issued by both USAA and Allstate. Finding that the trial court erred in its holding, we will reverse.

The case was tried below upon a stipulation of facts. The stipulation shows that on July 22, 1988, a vehicle operated by Nelda McGowan and owned by Paul B. Engel struck and killed five-year-old Kyle Whitley. The personal representative of Kyle's estate brought an action for his death against McGowan, seeking $10 million in damages.

At the time of the accident, Allstate had in force a personal umbrella insurance policy issued to McGowan providing "only excess insurance" up to $1 million "subject to primary coverage or self-retention limits of $100,000." USAA had in force a family automobile insurance policy issued to Engel providing primary liability coverage of $300,000 for each person. USAA also had in force a personal umbrella insurance policy issued to Engel providing excess liability coverage up to $1 million after the exhaustion of all primary coverage. Because McGowan was using Engel's vehicle with his permission at the time the accident in question occurred, both USAA policies applied to McGowan's liability arising out of such use.

As the primary insurer for the first $300,000 of applicable coverage, USAA undertook the defense of the action brought by Kyle's personal representative. Allstate did not participate in the defense, but retained counsel and assigned one of its employees to monitor the litigation and attend trial.

Three jury trials were conducted. The first resulted in a verdict against McGowan in the amount of $5 million. The trial court set this verdict aside and ordered a new trial on the issue of damages alone. A second trial resulted in a mistrial. During the course of this trial, USAA's senior claims attorney advised Allstate's representative that USAA would attempt to settle the case and asked that Allstate contribute to the settlement; the Allstate representative stated she had no settlement authority.

A third trial was held. Allstate's representative and its counsel attended the trial but had no settlement authority. On the second day of trial, USAA settled the case for $590,000. USAA then called upon Allstate to contribute one-half of that portion of the settlement above $300,000, the limit of USAA's primary coverage. When Allstate refused to contribute, USAA instituted the present litigation. After considering the stipulation of facts and hearing argument of counsel, the trial court entered judgment against Allstate for $173,343.93. We awarded Allstate this appeal.

The parties agree that *Midwest Mutual Insurance Co. v. Aetna Casualty & Surety Co.*, 216 Va. 926, 223 S.E.2d 901 (1976), states the applicable law relating to the doctrine of contribution:

> "The right to contribution as such does not arise out of any express contract or agreement between the parties to indemnify each other, but is based on the broad principles of equity that where two or more persons are subject to a *common burden* it shall be borne equally, since the law implies a contract between them to contribute ratably towards the discharge of the *obligation.* But in order to enforce contribution the payment must have been made by one *obligated* to pay the whole, as between himself and the payee, but only *bound* to pay a proportionate part as between himself and his co-obligors."

*Id.* at 929, 223 S.E.2d at 904 (quoting *Wiley N. Jackson Co. v. City of Norfolk*, 197 Va. 62, 66, 87 S.E.2d 781, 784 (1955)).

Allstate argues "there was no common obligation" between it and USAA and, hence, no basis for requiring contribution, because Allstate's "contractual conditions for attachment of such obligations had not been met." Allstate cites this provision of its policy, set forth in a section entitled "Conditions":

> [**Allstate**] will not begin to make payment for any **occurrence** covered by this policy until [**its**] liability has been determined by:
>
> 1. agreement between the **insured**, the claimant and [**Allstate**]; or
>
> 2. a final judgment against an **insured**, resulting from an actual trial.

Allstate says, and USAA does not dissent, that "[t]here is no stipulation or contention that there was an agreement entered into by [the insured, the claimant, and Allstate]" and "there never was a final judgment resulting from an actual trial fixing the amount of McGowan's liability."

On the other hand, citing *Erie Insurance Group v. Hughes*, 240 Va. 165, 393 S.E.2d 210 (1990), USAA maintains that "All-

state's argument overlooks the fact that, regardless of contrary language in an insurance contract, the law imposes a duty upon each insurer to exercise good faith in the determination whether to settle." USAA says Allstate could avoid the effect of its failure to perform this duty only by "proving that [USAA's] compromise was not made in good faith or was unreasonable and excessive." USAA concludes that Allstate "did nothing to attack USAA's good faith or the amount paid in settlement" and, hence, "failed to carry its burden."

*Hughes*, however, was not a contribution suit but a declaratory judgment proceeding brought to determine the rights and duties of the claimant, her uninsured motorist carrier, and the insurer of the offending vehicle. The question presented was whether the trial court had jurisdiction to issue a declaratory judgment. Finding that no justiciable controversy existed within the definition of the declaratory judgment statutes, we sustained the jurisdictional challenge. *Id*. at 170, 393 S.E.2d at 212. In the course of our opinion, however, we made this statement, upon which USAA now relies:

> [A]part from and in addition to the insurer's contractual obligation to defend and indemnify its insured, the insurer, faced as it was with the claimant's offer [to settle], had a common-law duty, one measured in terms of good faith conduct, to protect its insured against the threat of a judgment in excess of policy limits.

*Id*. at 168-69, 393 S.E.2d at 211.

██ This language, however, relates to the obligation of an insurer to its insured in a coverage context. USAA has not cited, and we have not found, any authority for the proposition that a similar obligation extends from one insurer to another in a contribution setting. We think the obligations resulting from the two relationships may differ, depending upon the circumstances. While Allstate may have owed its insured, McGowan, a common law duty to protect her against the threat of a judgment in excess of its policy limits, McGowan is not before this Court contending Allstate breached that duty, and USAA's citation of the quotation from *Hughes* tends to inject an irrelevant issue into the case.

Rather, the relevant issue is whether Allstate shared a common obligation with USAA, entitling the latter to contribution from

Allstate for settlement of the claim for Kyle's death. On this issue, we think the conditions contained in Allstate's policy become pertinent. Those conditions require the existence of a settlement agreement to which Allstate is a party or a final judgment against an insured before Allstate becomes obligated to pay a covered claim.*

█ It is undisputed that these conditions were not met. This question then emerges: If, because the conditions in Allstate's policy were not met and, therefore, Allstate never became obligated on the claim for Kyle's death, should Allstate be held to share a common obligation with USAA for settlement of the claim? In our opinion, the answer to this question is in the negative, unless the conditions in Allstate's policy are violative of statute or public policy. *See Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 449 S.E.2d 799 (1994).

USAA asserts that the question must be answered in the affirmative because Allstate's reliance on its policy conditions in refusing to participate in settlement of the claim for Kyle's death is, in fact, violative of statute and public policy. USAA cites Code § 38.2-510, which, USAA maintains, is declarative of this Commonwealth's public policy on the subject of unfair insurance practices. That section provides in pertinent part:

> § 38.2-510. Unfair claim settlement practices. — A. No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

> . . . .

> 6. Not attempting in good faith to make prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

█ It should not be necessary to point out that Paragraph 6 applies only when the failure to make good faith attempts to settle claims occurs "with such frequency as to indicate a general business practice" on the part of an insurer. Assuming for the moment

---

* USAA's policy contains a similar condition which provides that "no action with respect to LIABILITY coverage can be brought against [USAA] until the obligation of the insured has been determined by final judgment or agreement signed by [USAA]."

that Allstate's conduct in failing to participate in the settlement of the claim for Kyle's death may be called unfair, we think such failure, so far as the record discloses, was an isolated incident, insufficient to make Allstate's conduct "a general business practice." Hence, Code § 38.2-510(A)(6) does not prohibit Allstate's reliance on its policy conditions in this case.

We hold that Allstate did not share a common obligation with USAA for settlement of the claim for Kyle's death, and, hence, USAA was not entitled to an award of contribution from Allstate. Accordingly, we will reverse the judgment of the trial court and enter final judgment here in favor of Allstate.

*Reversed and final judgment.*