UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CREDIT GENERAL INSURANCE
COMPANY,
Plaintiff-Appellant,

          No. 00-1305

v.

ABATECO SERVICES, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-99-516)

Argued: December 7, 2000

Decided: March 28, 2001

Before WILKINS, MICHAEL, and MOTZ, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** Deborah Shea O'Toole, COWAN & OWEN, P.C., Rich-
mond, Virginia, for Appellant. David Allen Hearne, OUTLAND,
GRAY, O'KEEFE & HUBBARD, Chesapeake, Virginia, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Credit General Insurance Company (CGIC) filed this diversity suit against its insured, Abateco Services, Inc. (Abateco), seeking a declaration that the insurance policy does not provide Abateco coverage for its expenses in repairing a fire-damaged building. Abateco counter-claimed, seeking a declaration that CGIC is obligated to reimburse Abateco for its expenses. The parties filed cross-motions for summary judgment, and the district court granted Abateco's motion. CGIC maintains on appeal that Abateco breached a condition precedent to coverage and that, in any event, the loss is not covered under the policy. We conclude that the district court was correct in deciding that CGIC waived the condition precedent and that the policy's operations exclusion does not apply. We also conclude that there is a material factual issue of whether Abateco was negligent, and negligence is necessary for coverage in this case. Accordingly, we affirm in part, vacate in part, and remand for further proceedings on the negligence issue.

I.

Abateco is a Virginia corporation that specializes in asbestos removal. Abateco is insured by CGIC, an Ohio corporation, under a commercial liability insurance policy. Abateco entered into a subcontract with Virtexco Corporation (Virtexco), a general contractor that was renovating military housing for the Navy in Chesapeake, Virginia. As subcontractor Abateco was responsible for the removal of paint and asbestos at two units of a housing complex.

Roger Cornell was Abateco's superintendent on duty at the work site. On March 20, 1998, after Cornell and the other Abateco workers left for the day, a fire broke out, damaging the two housing units. On March 23 Abateco notified CGIC of a potential claim arising out of

2

the fire, and on March 30 CGIC acknowledged receipt of the claim. The Navy conducted an investigation into the cause of the fire and issued a report in May 1998. Cornell (the Abateco supervisor) told Navy investigators in March 1998 that he had "locked the doors" at both units at the end of the work day, shortly before the fire. However, the Navy report noted that the fire department, when it arrived to fight the fire, found that the front door to one of the units was unlocked. The report concluded, "The cause of the fire is suspicious. All causes such as electrical, mechanical, chemical, smoking material, and natural causes were systematically eliminated." The Navy subsequently instructed Virtexco to rebuild the fire-damaged units and to continue its work under the contract. Virtexco, in turn, told Abateco to perform the repair work at its expense or face termination of the subcontract.

CGIC was aware of these events. It had received a copy of the Navy's fire investigation report, and it knew that the Navy had demanded that the contractor rebuild the damaged units. Meanwhile, CGIC had hired Lindsey Morden Claims Services, Inc. (Lindsey Morden) to conduct its own fire investigation. Lindsey Morden concluded that "there is no negligence on the part of Abateco Services." On July 29, 1998, CGIC notified the Navy, Virtexco, and Abateco that it was "deny[ing] any payment in this matter." CGIC denied coverage on the ground that the fire was neither accidental nor caused by any negligence on the part of its insured, Abateco.

Abateco completed the repairs to the fire-damaged units at its own expense. On March 25, 1999, Abateco wrote CGIC, demanding that CGIC reimburse it for the repair costs in the amount of $191,671.70. CGIC based its demand on a March 15, 1999, letter written by Cornell, its supervisor. In this letter Cornell said that at the time the fire occurred, he was not checking at the end of each work day to make sure that the front and kitchen doors to the units were locked. According to Cornell, "The only door locked and checked daily was the garage door. The kitchen and side/front entrance doors were only checked when the containment was originally constructed," which was well before the fire. In its March 1999 demand to CGIC for reimbursement, Abateco asserted that Cornell's failure to lock all doors constituted negligence, and therefore the fire loss was covered under the insurance policy.

3

On July 20, 1999, CGIC filed this action, seeking a declaration that it is not obligated under the insurance policy to cover Abateco's loss.[1] Abateco counterclaimed, seeking the opposite, a declaration that it was entitled to insurance coverage for the repair costs. After both parties moved for summary judgment, they filed a stipulation of facts. Among other things, the parties stipulated that "unknown individuals" had entered the housing units and started the fire.

CGIC argued that Abateco was not entitled to coverage because it had failed to obtain CGIC's consent before incurring the costs of repair. CGIC's consent was a condition precedent to coverage under the policy.[2] Abateco responded that CGIC had waived compliance with the condition precedent by denying the claim. CGIC also maintained that the loss was not a covered "occurrence" because there was no "accident."[3] Finally, the insurance company argued that the loss was excluded from coverage for two other reasons: (1) because Abateco had contractually assumed liability and (2) because the loss arose out of Abateco's operations.[4]

_____

[1] Before CGIC had filed suit, Virtexco, on behalf of Abateco, had submitted a claim to the Navy Contracting Officer, seeking reimbursement for the cost of repairing the fire-damaged units. The Navy issued a decision denying the claim, and an appeal was filed with the Armed Services Board of Contract Appeals.

[2] Section IV(2)(d) of the policy provides, "No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."

[3] Section I(1)(b) of the policy provides, "This insurance applies to `bodily injury' and `property damage' only if . . . [t]he `bodily injury' or `property damage' is caused by an `occurrence' that takes place in the `coverage territory' . . . ." Section V(9) defines "occurrence" as "an accident." CGIC claimed that there was no "accident" because the Navy report concluded that the fire was of suspicious origin.

[4] Section I(2)(b) of the policy excludes from coverage that property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Section I(2)(j)(5) states that the insurance does not apply to property damage to "[t]hat particular part of real property on which [the insured's] contractors or subcontractors . . . are performing operations if the `property damage' arises out of those operations."

4

The district court analogized the condition precedent in this case to a policy provision requiring the filing of a proof of loss. Under Virginia law if an insurance company denies liability and refuses to pay a claim, it waives the right to insist upon the insured's filing of a proof of loss. Likewise, the district court concluded that by denying liability, CGIC had waived compliance with the condition precedent. It would have been useless for Abateco to attempt to get CGIC's consent to incur the repair costs because CGIC had already refused to pay the claim.

The district court also rejected CGIC's other arguments. It concluded that the loss was an "occurrence" under the policy because the fire was caused by an "accident," that is, Cornell's "negligen[ce] in failing to secure the premises." Furthermore, the district court held that neither of the policy exclusions relied upon by CGIC are applicable. According to the district court, Abateco did not assume liability under section I(2)(b) of the policy, see supra note 4, by reason of its subcontract with Virtexco. Abateco had to repair the units to avoid being held in default under its subcontract. In addition, the district court concluded that the operations exclusion in section I(2)(j)(5) of the policy, see supra note 4, did not release CGIC from its obligations. According to the court, the fire damage did not arise out of Abateco's operations since the fire started after all of the workers had left for the day. Based on the above reasoning, the district court granted Abateco's motion for summary judgment. CGIC appeals.

II.

We review a grant of summary judgment de novo. See Marshall v. Cuomo, 192 F.3d 473, 478 (4th Cir. 1999). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Any doubts as to the existence of a genuine issue of material fact will be resolved against the moving party. See Langham-Hill Petroleum Inc. v. S. Fuels Co., 813 F.2d 1327, 1329 (4th Cir. 1987); Girard v. Gill, 261 F.2d 695, 697 (4th Cir. 1958). Before entering summary judgment, a court must be certain that based on the record in front of it, there is no disputed issue of material fact. See Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1478 (4th Cir.

5

1996); <u>Para-Chem S., Inc. v. M. Lowenstein Corp.</u> 715 F.2d 128, 132 (4th Cir. 1983).

We are satisfied that there is no factual dispute with respect to two of the issues decided by the district court: that CGIC waived compliance with the policy's condition precedent and that the policy's operations exclusion does not apply. We are also satisfied that the district court reached the correct result in granting summary judgment to Abateco on these two issues, and to that extent we affirm on the reasoning of the district court. <u>See Credit Gen. Ins. Co. v. Abateco Servs., Inc.</u>, No. 3:99CV516 (E.D. Va. Feb. 25, 2000). We conclude, however, that there is a material factual dispute relating to whether the fire loss was covered under the insurance policy.

Abateco's insurance coverage extends to property damage that is caused by an "occurrence," which is defined as an "accident." An "accident" generally includes an insured's negligence but excludes an insured's intentional acts. <u>See</u> 14 Lee R. Russ & Thomas F. Segalla, <u>Couch on Insurance</u> § 201:6 (3d ed. 2000). Abateco claims that Cornell's negligence in failing to secure the doors to the units is the "occurrence" that entitles it to insurance coverage for the fire loss. But Abateco is not entitled to a full award of summary judgment unless Abateco can establish that there is no dispute of fact as to Cornell's negligence.

Cornell's (or Abateco's) negligence is relevant for another reason. The insurance policy contains an exclusion for those losses which the insured is obligated to pay "by reason of the assumption of liability in a contract or agreement." This exclusion serves to deny coverage in those cases where an insured agrees to hold harmless or indemnify a third party. <u>See</u> 9 <u>Couch on Insurance</u> § 129:30. The district court concluded that this exclusion does not apply to Abateco because Abateco did not assume liability under its subcontract with Virtexco. We do not have to go that far, however. The exclusion, by its terms, is inapplicable if the insured would be liable for the loss "in the absence of the contract or agreement." In other words, "the exclusion does not destroy coverage for the insured's own negligence, even that stemming from the insured's negligent performance of a contract." 9 <u>Couch on Insurance</u> § 129:30. If Abateco's negligence caused the fire loss, it would be liable for repairing the housing units regardless of

6

whether its subcontract required it to assume liability for fire loss. Therefore, if Abateco could show that it was negligent, CGIC would not be able to raise the exclusion as a bar to insurance coverage.

Abateco relies on Cornell's March 15, 1999, letter to establish its negligence. CGIC, however, did not stipulate or agree that Cornell failed to secure the doors to the units. Rather, CGIC pointed out to the district court and to us that Cornell had made inconsistent statements about what he did. On the one hand, Cornell told Navy investigators in March 1998 that he had "locked the doors" at both units. On the other hand, one year later in his March 15, 1999, letter supporting his employer's demand to the insurance company, Cornell said: "The only door locked and checked daily was the garage door. The kitchen and side/front entrance doors were only checked[well before the fire] when the containment was originally constructed." There might be an explanation for the apparent inconsistency in Cornell's statements, but the inconsistency is too material to ignore at the summary judgment stage, particularly since it was noted by CGIC in the district court.

For the foregoing reasons, we conclude that Abateco is not entitled to complete summary judgment because a genuine issue of material fact remains--whether Cornell was negligent in failing to secure the doors to the housing units. Accordingly, we vacate the district court's entry of complete summary judgment in favor of Abateco and remand for further proceedings on the issue of negligence.

AFFIRMED IN PART, VACATED
IN PART, AND REMANDED

7