PRESENT: All the Justices

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, ET AL.

                                                   OPINION BY
v. Record No. 160805                  JUSTICE CLEO E. POWELL
                                             April 13, 2017

ERIE INSURANCE EXCHANGE, ET AL.

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
Carroll A. Weimer, Judge

In this declaratory judgment action, Nationwide Mutual Fire Insurance Company and

Nationwide Mutual Insurance Company (collectively "Nationwide") requested that the Circuit

Court for Prince William County ("trial court") determine the priority of five separate insurance

policies provided by Nationwide and Erie Insurance Exchange ("Erie"). The trial court

concluded that the order of priorities and coverages were: (1) Nationwide Business Auto Policy,

$1,000,000; (2) Nationwide Commercial General Liability Policy ("Nationwide CGL Policy"),

$1,000,000; (3) Nationwide Commercial Umbrella Liability Policy ("Nationwide Umbrella

Policy"), $1,000,000; (4) Erie Commercial Auto Policy ("Erie Auto Policy"), $1,000,000; (5)

Erie Business Catastrophe Liability Policy, $5,000,000. Nationwide appeals.

## I. BACKGROUND

East Coast Insulators, Inc. ("East Coast") and Rodriguez Construction ("Rodriguez")

entered into a subcontract for construction related services.[1] East Coast lent a vehicle to

Rodriguez for the performance of work pursuant to their subcontract. Moises Rodriguez Manzur

("Manzur") drove East Coast's vehicle in the course of his employment with Rodriguez. On

---

[1] East Coast and Rodriguez are not parties to this case.

October 4, 2013, he struck a vehicle operated by Martin Klaiber, who later died as a result of the collision. Stephanie Klaiber, the Personal Representative of the Estate of Martin Klaiber ("the Estate"), filed a wrongful death suit against Manzur and East Coast in the Circuit Court of Loudoun County on December 10, 2013 (the "Tort Action"). East Coast was later nonsuited from the Tort Action on July 24, 2014.[2]

East Coast was insured under an Erie Commercial Auto Policy ("Erie Auto Policy"). Erie also provided East Coast with a Business Catastrophe Liability Policy containing a Commercial Liability Umbrella Coverage Form (collectively "Erie Umbrella Policy"). East Coast's subcontract with Rodriguez contained an insurance provision requiring Rodriguez to obtain primary insurance to cover bodily injury caused by accident. Rodriguez purchased insurance policies from Nationwide, including (1) Nationwide Business Auto Policy ("Nationwide Auto Policy"); (2) Nationwide Commercial General Liability Policy ("Nationwide CGL Policy"); and (3) Nationwide Commercial Umbrella Liability Policy ("Nationwide Umbrella Policy"). The subcontract also contained an indemnification provision that obligated Rodriguez to indemnify East Coast against any injuries that arose from work performed under the subcontract.

On August 11, 2014, Erie and Manzur filed the present lawsuit against Nationwide and the Estate seeking a declaration of the priority of liability coverage between the Erie and Nationwide policies. Nationwide thereafter filed a counterclaim and cross-claim for declaratory judgment against Erie, Manzur, and the Estate. Nationwide requested that the trial court find that

---

[2] Counsel for Erie conceded during oral argument before the Court that the trial court in the declaratory judgment action was never made aware that East Coast was nonsuited from the Tort Action.

Erie's policies provided primary liability coverage. Erie argued that the indemnification agreement required Nationwide's policies to provide primary liability coverage.

Following a bench trial, the trial court ruled in favor of Erie, holding that the indemnification provision in the subcontract between East Coast and Rodriguez controlled and "establishe[d] East Coast Insulators' right to indemnification from Rodriguez Construction through its insurer Nationwide." The trial court went on to state that the indemnification provision:

> is nothing more than a contract between the parties to predetermine the allocation of potential risk of loss and Virginia law favors such contracts between competent parties for a valid purpose as set forth in *Farmers Insurance Exchange v*[.] *Enterprise Leasing Co*[.], 281 Va. 612, [708 S.E.2d 852 (2011)] at page 619 . . . , which states, the general rule is that an indemnity agreement between the insurers or a contract with an indemnification clause may shift an entire loss to a particular insurer, notwithstanding the existence of another insurance clause in its policy.

Applying the indemnification provision in the subcontract, the trial court then determined the priority of coverage as: (1) Nationwide Auto Policy, (2) Nationwide CGL Policy; (3) Nationwide Umbrella Policy; (4) Erie Auto Policy; and (5) Erie Umbrella Policy.

This appeal followed.

## II. ANALYSIS

### A. Standard of Review

"Courts interpret insurance policies, like other contracts, in accordance with the parties' intentions as determined from the words they have used in their contract. The interpretation of policy provisions presents a question of law that we consider *de novo*." *Lower Chesapeake Assoc. v. Valley Forge Ins. Co.*, 260 Va. 77, 87-88, 532 S.E.2d 325, 331 (2000) (citations omitted).

3

## B. Nationwide's CGL Policy

Nationwide argues on appeal that the trial court erred in determining that the Nationwide CGL Policy provides liability coverage, notwithstanding the exclusion in that policy for claims arising out of the use of automobiles.  We agree.

"When an insurer drafts policy language setting forth exclusions that limit coverage under a policy, the insurer is required to use language that clearly and unambiguously defines the scope of the exclusions."  *Id*. at 88, 532 S.E.2d at 331.  Here, Nationwide's CGL Policy contains a clear exclusion for bodily injury and property damage liability under subsection (2)(g):

> 2. Exclusions: This insurance does not apply to:
>
> . . . .
>
> g. Aircraft, Auto or Watercraft
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

Thus, the Nationwide CGL Policy excludes coverage for injury and property damage liability arising from Manzur's use of an auto.

The policy goes on to describe several exceptions to the exclusions, none of which concern autos.  The most closely relevant exception concerns:  "(4) Liability assumed under any 'insured contract' for the ownership, maintenance or use of aircraft or watercraft."  However, this exception to the Aircraft, Auto or Watercraft exclusion does not mention any exception to the exclusion regarding the use of an auto.  Therefore, Nationwide's CGL Policy would not apply to provide coverage for bodily injuries arising out of Manzur's auto accident.

Thus, by its plain language, the Nationwide CGL policy excludes from coverage any bodily injury arising out of the use of an auto.  *See McQuirter v. Rotolo*, 77 So. 3d 76, 82 (La. App. 2011) ("The automobile exclusion is unambiguous and operates to broadly bar coverage for

4

bodily injury or property damage 'arising out of the use of an[] auto.'") (alterations and some internal quotation marks omitted). The trial court erred in its priority analysis by finding Nationwide's CGL Policy provided coverage immediately after Nationwide's Auto Policy. Indeed, the Nationwide CGL Policy did not apply at all to provide coverage. Accordingly, we reverse the trial court's determination that the Nationwide CGL Policy ranked second in the priority list of insurance coverages.

C. Subcontract's Indemnification Clause

Nationwide argues that the trial court erred in determining its three policies provided primary coverage for the wrongful death of Martin Klaiber. According to Nationwide, because the underlying tort action did not include a claim against East Coast, the indemnification provision in the subcontract is irrelevant making Nationwide's coverage secondary to Erie's Auto Policy and its Umbrella Policy. Relying on *St. Paul Fire & Marine Insurance Co. v. American International Specialty Lines Insurance Co.*, 365 F.3d 263 (4th Cir. 2004) (concluding that an indemnification provision may shift an entire loss to a particular insurer), as did the trial court, Erie argues that the indemnification provision in the subcontract shifted the entire loss to Nationwide obligating it to be the primary insurer. While we agree with the rationale in *St. Paul Fire & Marine*, that an indemnification agreement may shift the loss from one insurer to another, under the facts of this case it simply is not applicable.

Here, the indemnification provision required Rodriguez to indemnify East Coast against any injuries which arose from work performed under the subcontract. Section 10 of the subcontract states:

> INDEMNIFICATION. To the fullest extent permitted by law, Subcontractor hereby agrees to indemnify, hold harmless, and defend (at Subcontractor's sole expense) Contractor, the Owner, affiliated companies of Contractor, their partners, joint ventures,

5

representatives, etc. . . . ("Indemnified parties"), from and against any and all claims for bodily injury, death, damage to property, losses, theft, damages, actions, causes of action, suits, losses, judgments, obligations and any liabilities, costs and expenses . . . ("Claims") which arise or are in any way connected with the Work performed, materials furnished, or services provided under this Agreement by Subcontractor, and/or its employees, agents, sub-subcontractors and/or suppliers.

The trial court found that "the indemnification provision in this case is enforceable and establishes East Coast['s] [] right to indemnification from Rodriguez [] through its insurer, Nationwide." If the facts presented here raised an issue as to providing coverage for East Coast, the trial court might be correct. However, coverage for East Coast is not and never has been at issue in this declaratory judgment action. East Coast was nonsuited as a party in the underlying Tort Action. Rather, the issue is who is obligated to cover Manzur for his actions during the course of his employment with Rodriguez. Manzur, not East Coast, was a party to the Tort Action and is a party to the declaratory judgment action now before us. Thus, the indemnification provision between East Coast and Rodriguez is irrelevant to this case.

In an opinion that we find persuasive, the United States Court of Appeals for the Fourth Circuit found that an indemnification agreement was irrelevant where coverage for the party to be indemnified was not at issue. *Travelers Prop. Cas. Co. of Am. v. Liberty Mut. Ins. Co.*, 444 F.3d 217 (4th Cir. 2006). In *Travelers*, the Fourth Circuit found that

> [t]he principles of *St. Paul* [*Fire & Marine*], however, are not relevant to the case before us. The issue here is coverage for *only* Ryland's liability. . . . This is not a case where we are determining State Street's liability vis-à-vis Ryland's. The fact that Ryland agreed to indemnify State Street under the Pooling Agreement does not absolve Liberty Mutual of its independent contractual obligation to insure Ryland as State Street's 'real estate manager.' If the issue in this case turned on the underlying liability as between Ryland and State Street, we would likely conclude, as Liberty Mutual urges, that Ryland bore full responsibility because of its indemnification agreement.

6

*Id.* at 224-25. Likewise, the issue here is coverage only for Manzur's liability as an employee of Rodriguez while driving a car owned by East Coast. The fact that Rodriguez agreed to indemnify East Coast for claims arising from work performed under the subcontract does not absolve Erie of its contractual obligation to insure any vehicles owned by East Coast. The Erie Auto Policy issued to East Coast expressly provides coverage for any "auto" owned by East Coast.

Erie relies on *Clarendon National Insurance Co. v. United Fire & Casualty Co.*, 571 F.3d 749, 753 (8th Cir. 2009), for the proposition that if language in an indemnification clause is broad, as they assert the indemnification agreement is here, "the priorities of the insurance would be determined by the presence of the language even if the direct beneficiary of the duty to indemnify was not a party to the tort lawsuit." *Clarendon*, however, is inapposite. Notably, the indemnity language in *Clarendon* required one party to assume "'*any and all liability* for injury . . . caused by the operation, use, control, handling, or transportation of the [truck].'" *Id.* at 753. The *Clarendon* court construed that language broadly to apply regardless of whether the claim was against the owner of the vehicle. In contrast, the indemnification agreement in the present case only required Rodriguez to indemnify East Coast from any claims against East Coast. As we previously stated, there are no claims against East Coast. Therefore, Rodriguez is not required to indemnify East Coast.

Accordingly, the trial court erred in finding the indemnification agreement applied to require all three of Nationwide's policies to provide primary insurance coverage ahead of Erie's two policies.

7

## D. Order of Priorities

Having determined that the trial court erred in finding the Nationwide CGL Policy and the indemnification agreement applied, we now turn to the issue of establishing the proper order of priority of insurance coverage.

### 1. Erie Auto Policy

East Coast insured its company and vehicles with Erie. The Erie Auto Policy provides coverage for "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." "For any covered 'auto' you own, this Coverage Form provides primary insurance." The vehicle Manzur was driving was owned by East Coast and constituted a "covered auto," therefore, the Erie Auto Policy provides primary coverage up to its coverage limit of $1,000,000.

### 2. Nationwide Auto Policy

Rodriguez insured its company and employees with Nationwide. The Nationwide Auto Policy provides coverage for "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." "For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." Manzur, an employee of Rodriguez, was driving a "covered auto" that Rodriguez did not own, therefore, the Nationwide Auto Policy provides excess coverage, up to $1,000,000, after the Erie Auto Policy is exhausted.

### 3. Umbrella Insurance Policies

The remaining insurance policies are the Nationwide Umbrella Policy, providing coverage up to $1,000,000, and the Erie Umbrella Policy, providing coverage up to $5,000,000. In determining coverage priorities between two escape or excess policies, normal principles of contract interpretation apply. *GEICO v. Universal Underwriters Ins. Co.*, 232 Va. 326, 330, 350 S.E.2d 612, 615 (1986). When "'other insurance' clauses of two policies are of identical effect

in that they operate mutually to reduce or eliminate the amount of collectible insurance available, neither provides primary coverage and . . . 'pro rata distribution [is] appropriate.'" *Aetna Cas. & Sur. Co. v. National Union Fire Ins. Co.*, 233 Va. 49, 54, 353 S.E.2d 894, 897 (1987) (quoting *State Capital Ins.* v. *Mutual Assurance Soc'y.*, 218 Va. 815, 820, 241 S.E.2d 759, 762 (1978)).

The Nationwide Umbrella Policy's "other insurance" provision provides that:

> [i]f 'other insurance' applies to claims covered by this policy, the insurance under this policy is excess and we will not make any payments until the 'other insurance' has been exhausted by payment of claims.

"Other insurance" is defined in Nationwide's Umbrella Policy as "a policy of insurance affording coverage that this policy also affords. 'Other insurance' includes any type of self-insurance or other mechanism by which an 'insured' arranges for funding of legal liabilities."

The "other insurance" provision in Erie's Umbrella Policy states:

> [t]his insurance is excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis.

Each "excess insurance" clause either "expressly negates contribution with other carriers, or otherwise manifests that it is intended to be excess over the other excess policies." *State Farm Fire & Cas. Co. v. LiMauro*, 482 N.E. 2d 13, 18 (N.Y. 1985) (citations omitted). *See AIG Premier Ins. Co. v. RLI Ins. Co.*, 812 F. Supp. 2d 1315, 1323 (M.D. Fla. 2011) (same). Specifically, Erie's policy provides that it "is excess over, and shall not contribute with any of the other insurance." It then delineates various types of insurance, i.e., "primary, excess, contingent or on any other basis." Reduced to its essence, the endorsement negates contribution.

To the same extent, but in a more direct fashion, Nationwide's excess policy provides "the insurance under this policy is excess and we will not make *any* payments until the 'other insurance' has been exhausted by payment of claims." (Emphasis added). Under the terms of

9

Nationwide's policy, "other insurance" includes "any" type of self-insurance or "other mechanism" by which an insured arranges for funding of liabilities. "'The word 'any,' like other unrestrictive modifiers[,] is generally considered to apply without limitation.'" *Shevlin Smith v. McLaughlin*, 289 Va. 241, 264, 769 S.E.2d 7, 19 (2015) (quoting *Sussex Cmty. Servs. Ass'n v. Virginia Soc'y for Mentally Retarded Children, Inc.*, 251 Va. 240, 243, 467 S.E.2d 468, 469 (1996)). The words "other mechanism" can be construed to include primary, excess, contingent, or any other insurance.

In this instance, we join the New York Court of Appeals in "reject[ing] as an exercise in 'meaningless semantics' the effort to determine which among policies covering the risk which occurred is the more specific." *LiMauro*, 482 N.E.2d at 16. We adopt the reasoning of *AIG Premier* which found "[t]he phrase 'whether primary, excess or contingent' does not add anything to the all[-]inclusive 'other valid' phrase" in the umbrella policies. 812 F. Supp. 2d at 1324 (quoting *LiMauro*, 482 N.E.2d at 19). We find that the use of "any" as found in Erie's provision referring to "any of the other insurance," as well as Nationwide's "other insurance" definition of "any type of self-insurance or other mechanism," function as all-inclusive terms. "The super-escape phraseology may be more specific, but its listing of other coverage still falls within the ambit of the very broad phrase[s]" "any of the other insurance" or "any type of self-insurance." *Id.* Accordingly, we conclude that the provisions are virtually identical in effect, and that they are irreconcilable and mutually repugnant. In this situation, therefore, pro rata distribution is appropriate. *Aetna*, 233 Va. at 54, 353 S.E.2d at 897. The order of priorities for the applicable insurance policies in this case is: (1) Erie Auto Policy; (2) Nationwide Auto Policy; (3) Nationwide Umbrella Policy and Erie Umbrella Policy, pro rata.

## III.  CONCLUSION

For the foregoing reasons we find that the trial court erred in ruling that the indemnification provision in the subcontract applied in this case; that the Nationwide CGL Policy provided secondary coverage in this case; and hold that the order of priorities in this case is: (1) Erie Auto Policy; (2) Nationwide Auto Policy; (3) Nationwide Umbrella Policy and Erie Umbrella Policy, pro rata.

*Reversed and final judgment*.