# **VIRGINIA:**

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 18th day of July, 2019.*

Present: All the Justices

Nationwide Mutual Fire Insurance Company, et al.,                                         Appellants,

 against                              Record No. 180572
                                     Circuit Court No. CL00-108820

Erie Insurance Exchange,                                                                  Appellee.

                                                        Upon an appeal from a judgment
                                                        rendered by the Circuit Court of Loudoun
                                                        County.


         In *Nationwide Mutual Fire Insurance v. Erie Insurance Exchange*, 293 Va. 331 (2017)

("*Nationwide I*"), we resolved an insurance coverage dispute between two affiliated insurers

(Nationwide Mutual Fire Insurance Company and Nationwide Mutual Insurance Company,

collectively "Nationwide") and a third insurer (Erie Insurance Exchange, or "Erie").

         After our ruling, Nationwide instituted an equitable contribution action against Erie

seeking reimbursement for Erie's share of a monetary settlement that Nationwide had paid to a

tort claimant while the case was on appeal.  The circuit court sustained Erie's demurrer to the

claim for equitable contribution.  On appeal, Nationwide now contends that the circuit court

erred as a matter of law and that the court should have denied Erie's demurrer to the claim of

equitable contribution based upon the coverage allocation that we had determined in *Nationwide

I*.  Agreeing with this view, we reverse and remand.

                                                   I.

         *Nationwide I* began as a declaratory judgment action in the circuit court.  Both

Nationwide and Erie had issued insurance policies allegedly covering a defendant sued in a

wrongful death action arising out of an automobile accident.  Nationwide had issued three

policies:  a commercial general liability policy with a $1 million coverage limit; a business

automobile policy with a $1 million coverage limit; and a commercial umbrella liability policy

with a $1 million coverage limit.  Erie had issued two policies:  a commercial automobile policy

with a $1 million coverage limit and a business catastrophe policy with a $5 million coverage limit. In the original declaratory judgment action, the insurers disputed the policy coverages and priorities.

The circuit court in *Nationwide I* held that Nationwide had primary coverage for the first $3 million in liability and that Erie's policies provided excess coverage beyond that amount. Shortly after this ruling, the tort claimant's counsel in the wrongful death action offered to settle the claim with Nationwide for $2.9 million. The tort claimant's counsel warned that if Nationwide were to refuse the settlement, he would seek $10 million in damages at trial. Nationwide requested that Erie contribute toward the $2.9 million settlement. After Erie refused to do so, Nationwide paid the settlement in full and secured a full release of liability for its insured.

Thereafter, we granted an appeal to Nationwide and reversed the circuit court's declaratory judgment holding. We held that Nationwide's commercial general liability policy provided no coverage, that Erie's commercial automobile policy provided primary coverage for up to $1 million, that Nationwide's business automobile policy provided excess coverage for up to $1 million, and that Nationwide's commercial umbrella policy and Erie's business catastrophe policy provided excess coverage on a pro rata basis after that. *See Nationwide I,* 293 Va. at 340-43. Although we were aware of the underlying settlement of the tort claim at the time of our decision, we offered no opinion regarding whether Erie had any obligation to reimburse Nationwide for any part of the $2.9 million settlement given our reversal of the circuit court's coverage determination.

Nationwide then filed suit against Erie seeking equitable contribution of $1.75 million for Erie's alleged share of the $2.9 million settlement, which was calculated based upon our reordering of the coverages on appeal.[1] Erie demurred, arguing that it had no common obligation with Nationwide to pay the settlement because Nationwide had made a unilateral and voluntary settlement payment and because a condition precedent to Erie's obligation to pay under its insurance policies, namely, the existence of a judgment or Erie's consent to settle, had

_____

[1] Nationwide also asserted claims of equitable subrogation, equitable indemnification, and unjust enrichment. Given our holding in this case, however, we need not address these alternative theories of recovery.

2

not been satisfied. The circuit court sustained Erie's demurrer and dismissed Nationwide's complaint with prejudice.

The circuit court held that "Nationwide did not establish that it and Erie had a common obligation," J.A. at 339, for two reasons. First, Nationwide did not assert that its $2.9 million payment had been "forced upon it"; indeed, the court reasoned, Nationwide had "made the unilateral and voluntary decision to accept" the $2.9 million settlement. *Id.* Second, Nationwide's complaint did not assert that either of the conditions precedent to Erie's obligation to pay a claim (a judgment or Erie's consent to settle) had been satisfied. Erie, moreover, "did not waive its consent-to-settlement provisions" because "[r]efusal to consent to a settlement by a co-insurer is not the same as denial of coverage overall to the [insured tortfeasor]." *Id.* at 339-40. The court thus held that Nationwide had failed to state a cause of action for equitable contribution against Erie.

II.

Nationwide argues on appeal that its allegations were sufficient to state a claim against Erie for equitable contribution.[2] We agree.

In an appeal of an order sustaining a demurrer, "we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff," *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 370-71 (2018) (citation omitted), but "we review all conclusions of law de novo," *Coward v. Wellmont Health Sys.*, 295 Va. 351, 359 (2018) (citation omitted).

Equitable principles, not common-law precedents, govern whether Erie is obligated to contribute toward Nationwide's settlement with the tort claimant. Equitable contribution "does not arise out of any express contract or agreement between the parties to indemnify each other, but is based on the broad principles of equity that where two or more persons are subject to a *common burden* it shall be borne equally, since the law implies a contract between them to contribute ratably towards the discharge of the *obligation*." *Midwest Mut. Ins. v. Aetna Cas. & Sur. Co.*, 216 Va. 926, 929 (1976) (emphases in original) (citation omitted). "But in order to

---

[2] While Nationwide asserted four causes of action in its complaint, it appealed the circuit court's ruling sustaining Erie's demurrer as to only three causes of action, and this Court granted four assignments of error that only encompassed two of those causes of action (equitable contribution and equitable subrogation).

3

enforce contribution the payment must have been made by one *obligated* to pay the whole, as between himself and the payee, but only *bound* to pay a proportionate part as between himself and his co-obligors." *Id.* (emphases in original) (citation omitted).

We find that Nationwide's complaint alleges facts that, if proven, justify an award of equitable contribution. Nationwide settled with the tort claimant for an amount for which it was then wholly liable, based upon the circuit court's holding that Nationwide was liable to cover the first $3 million. We later reversed the circuit court's holding, finding that Erie was responsible for primary coverage of up to $1 million, that Nationwide was responsible for excess coverage of up to $1 million after that, and that both parties shared, pro rata, responsibility for excess coverage over that amount (here $900,000) under their respective umbrella and catastrophe policies. Our holding reconfigured their respective obligations.

The purpose of equitable contribution is to spread the ultimate liability in a fair proportion among the jointly liable obligors. *Midwest Mut. Ins.*, 216 Va. at 929 (stating that "where two or more persons are liable to pay a claim and one or more of them pays the whole of it, or more than his or her share, the one so paying may generally recover from the others the ratable proportion of the claim that each ought to pay" (emphases and citation omitted)); *see also Briggs v. Barnett*, 108 Va. 404, 410, *modified on reh'g*, 108 Va. 404, 411 (1907). Even when a payor misapprehends the law governing the payment, we need "not mechanically apply the rule of voluntariness based on mistake of law where to do so would lead to a 'wholly inequitable result.'" *Williams v. Consolvo*, 237 Va. 608, 614 (1989) (citation omitted).

Erie seeks refuge in our decision in *Allstate Insurance v. United Services Automobile Ass'n*, 249 Va. 9 (1995). We find it inapplicable. In that case, the primary insurer had paid its policy limits to settle a tort claim and later sought equitable contribution from an excess insurer. Both insurers had accepted coverage for the insureds' liability for an automobile accident. *See Allstate Ins.*, 249 Va. at 11. The excess insurer, however, defended against contributing toward the settlement of a *covered* claim, *see id.* at 14, because of a provision in its policy stating that it would not "make payment for any occurrence covered by this policy until [its] liability has been determined" by either the insurer's agreement to pay or by the entry of a final judgment against the insured, *id.* at 12 (alteration in original) (emphases omitted). We held that these conditions precedent to payment of the policy proceeds — which had not been met in that case — would have been enforceable against the insured, and thus, it was equally enforceable against the

4

primary insurer seeking equitable contribution. *See id.* at 14-15. The claim for equitable contribution, therefore, did not arise out of a "common obligation" because at the time of the settlement, the excess insurer had a right under its policy to deny payment to the insured on the covered claim. *Id.*

The present case is quite different. Here, Erie refused to contribute toward the settlement because, armed with a circuit court order confirming its view, it took the position that Nationwide was exclusively responsible for the first $3 million in coverage. The settlement amount, $2.9 million, was within that amount of Nationwide's exclusive coverage, and thus, Erie was not responsible to contribute anything toward the settlement. For this reason, Erie effectively denied any obligation to cover claims under $3 million. Erie's refusal to contribute toward a settlement under $3 million had nothing to do with Erie's right to agree to the settlement but was instead based upon Erie's then-existing right to refuse to pay anything toward a settlement exclusively within Nationwide's, not Erie's, coverage.

Under settled principles, an insurer that denies coverage waives any contractual right to participate in a settlement of the claim and cannot later refuse to pay a covered claim on this basis. *See* 3 Irvin E. Schermer & William J. Schermer, Automobile Liability Insurance § 42:3, at 42-13 (4th ed. 2018) (collecting cases and stating that "[a] denial of coverage prior to the insured's settlement with the tortfeasor constitutes a waiver of the consent-to-settle clause"); 1 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 5:5, at 5-44 (6th ed. 2013) (collecting cases and stating that an insurance company's "erroneous belief that there is no coverage or only limited coverage under the policy" does not "justify the company's refusal to settle in an appropriate case"); *cf.* 22 Eric Mills Holmes, Holmes' Appleman on Insurance 2d § 137.10[A][1], at 191-92 (2003).

For this reason, the conditions precedent to payment requiring consent to a settlement or judgment against the insured did not apply here. *Id.* As one court stated nearly a century ago: "The insurance company's initial repudiation of the contract in denying liability under the policy relieved the insured of strict performance of those provisions intended for the protection of the insurer only if it recognized the liability and assumed charge of the matters relating to the claim." *Murphy & Co. v. Manufacturers' Cas. Co.*, 89 Pa. Super. 281, 286 (1926); *see, cf. Continental Cas. Co. v. Lindsay*, 111 Va. 389, 391 (1910) ("This refusal of the company to recognize any

5

claim . . . is treated as waiving a strict compliance with the condition as to the preliminary notice and proof, both in respect to form and time.").

To the extent that we have not clearly stated the point previously, we do so now. *See generally Builders Mut. Ins. v. Dragas Mgmt. Corp.,* 709 F. Supp. 2d 441, 449 (E.D. Va. 2010) ("Under Virginia law, however, an insurer that denies coverage waives the right to assert the consent requirements of the policy."); *Credit Gen. Ins. v. Abateco Servs., Inc.*, No. 3:99CV516, 2000 WL 35792722, at *3 (E.D. Va. Feb. 25, 2000) (correctly drawing an analogy to the rule in *Seaboard Fire & Marine Ins. of N.Y. v. Hurst*, 186 Va. 21, 26 (1947) in concluding that "an insurance company's denial of liability also implies its waiver of the insured's duty to comply with a policy's consent to settlement provision"), *aff'd in part, vacated in part on other grounds*, 11 Fed. Appx. 47 (4th Cir. 2001); *cf. Seaboard Fire & Marine Ins. of N.Y.*, 186 Va. at 26 ("[I]f the insurance company denies liability for a loss and refuses to pay for that reason, and not for the reason that there has been no proof of loss filed by the claimant, it waives the right to insist on the filing of the proof of loss."); *Continental Cas. Co.*, 111 Va. at 391 ("A distinct denial of liability and refusal to pay on the ground that there is no liability is a waiver of the condition requiring proof of loss.").

### III.

The circuit court erred by granting Erie's demurrer and dismissing Nationwide's claim for equitable contribution. We vacate the court's final judgment and remand the case to the circuit court to determine the reasonableness of the settlement[3] and to enter an order awarding contribution to Nationwide consistent with our allocation of coverage liability in *Nationwide I* and with the views expressed herein.

This order shall be published in the Virginia Reports and certified to the Circuit Court of Loudoun County.


JUSTICE KELSEY, with whom joins JUSTICE GOODWYN, dissenting.

Nationwide's argument suffers from a fatal conceptual flaw. Erie's alleged *breach* of its duty to equitably contribute to the $2.9 million settlement occurred nearly three years before Erie

---

[3] A settling insurer seeking equitable contribution from another insurer "must establish the reasonableness of the amount paid" in the settlement. 2 Windt, *supra*, § 10:1, at 10-4 to -5.

6

had any legal *duty* to contribute.[1] At the time that Nationwide settled the tort claim, Erie had no coverage liability for the first $3 million. A circuit court had so held. At that time, Erie legally occupied the role of excess insurer, and Nationwide was the primary insurer. Absent an agreement to the contrary, a primary insurer cannot assert equitable contribution against an excess insurer[2] because the two do not have a concurrent, common obligation under their respective insurance policies.[3]

Equitable contribution benefits a claimant "who pays a debt that is *concurrently* owed by another." 2 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds § 10:1, at 10-2 (6th ed. 2013) (emphasis added). That is to say, "the payment must have been made upon a debt for which the defendant was legally liable *at the time of the payment*." *Turner v. Thom*, 89 Va. 745, 747 (1893) (emphasis added); *see Great Am. W.,*

---

[1] A cause of action for equitable contribution accrues when the party seeking contribution pays or discharges the jointly owed, concurrent obligation, unless that party brings a "third-party claim permitted by subsection A of § 8.01-281 and the Rules of Court," Code § 8.01–249(5). *See Graham v. Community Mgmt. Corp.*, 294 Va. 222, 228 & n.3 (2017) (stating in dicta that "a defendant may bring a claim for indemnification or contribution before she is held liable or required to pay a claim" and referencing Rule 3:13); *Hensel Phelps Constr. Co. v. Thompson Masonry Contractor, Inc.*, 292 Va. 695, 704 (2016) ("Code § 8.01–249(5) states that, '[i]n actions for contribution or indemnification,' the action shall be deemed to accrue when 'the contributee or the indemnitee has paid or discharged the obligation.'"); Kent Sinclair, Sinclair on Virginia Remedies § 11-6, at 11-15 to -16 (5th ed. 2016); Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 4.9[I], at 472 (6th ed. 2014).

[2] *See generally* 22 Eric Mills Holmes, Holmes' Appleman on Insurance 2d § 141.8[B], at 459 (2003) ("In the absence of an agreement . . . there is no contribution between a primary and an excess carrier."); 15 Steven Plitt et al., Couch on Insurance 3d § 218:7, at 218-12 to -13 (2005) ("As a rule, an insurer which is primarily responsible for a loss has no right of contribution from another insurer whose liability is only secondary."). Put another way, "because the primary and the excess policies are not considered to insure exactly the same 'risk' (*e.g.*, they insure different layers of risk), the principle of equitable contribution has been held not to apply to a primary vs. excess insurer dispute." 13 John T. Harding & Rachel M. Davison, New Appleman on Insurance Law Library Edition § 166.03[3], at 166-9 to -10 (Jeffrey E. Thomas & Francis J. Mootz, III eds., 2009).

[3] *See, e.g.*, *Great W. Cas. Co. v. Canal Ins.*, 901 F.2d 1525, 1527 (10th Cir. 1990); *Scottsdale Ins. v. Essex Ins.*, 119 Cal. Rptr. 2d 62, 67 (Cal. Ct. App. 2002); *Home Ins. v. Cincinnati Ins.*, 821 N.E.2d 269, 276 (Ill. 2004); *American Family Mut. Ins. v. Regent Ins.*, 846 N.W.2d 170, 193 (Neb. 2014); *United States Fid. & Guar. Co. v. Federated Rural Elec. Ins.*, 37 P.3d 828, 832 (Okla. 2001); *National Farmers Union Prop. & Cas. Co. v. Farm & City Ins.*, 689 N.W.2d 619, 625 n.2 (S.D. 2004).

*Inc. v. Safeco Ins.*, 277 Cal. Rptr. 349, 353 (Cal. Ct. App. 1991) (concluding that the settling insurer's "claim for contribution and/or indemnity never came into existence because *at the time it paid* the [insured's] claim, [the nonsettling insurer] was no longer under any contractual obligation to cover the loss" (emphasis added)); *Peterson v. Nichols*, 129 P. 373, 374 (Wash. 1913) ("The party from whom contribution is demanded must have been under a legal obligation to pay at the time the payment was made by those who demand the contribution." (citing, *inter alia*, our opinion in *Thom*)).

This rule of concurrence is an equitable principle with historic provenance. *See* 2 Fred F. Lawrence, A Treatise on the Substantive Law of Equity Jurisprudence § 743, at 829 (1929) (recognizing that the equitable right of contribution "is not available when the obligation discharged is not binding on the defendant *at the time of payment*" (emphasis added)); *cf.* 2 Joseph Story, Commentaries on Equity Jurisprudence as Administered in England and America § 671, at 82-83 (W.H. Lyon, Jr. ed., 14th ed. 1918) ("In order for the surety to recover his ratable part from a co-surety, it is necessary for him to show that the debt that he has discharged was a binding and subsisting obligation for which he was jointly liable with his co-surety, and if he pays a debt for which the co-surety was not liable . . . he is not entitled to contribution from his co-surety.").

In the insurance context, the "theory" behind equitable contribution is that the party seeking it has paid more than its "proportionate share" of a debt that "was *equally* and *concurrently* owed by the other insurers." *Fireman's Fund Ins. v. Maryland Cas. Co.*, 77 Cal. Rptr. 2d 296, 303 (Cal. Ct. App. 1998) (emphases in original).[4] If the debt at the time of payment was not concurrently owed, there can be no equitable contribution. *See Thom*, 89 Va. at 747. "In deciding whether one insurer is liable for equitable contribution to another, the inquiry is whether the nonparticipating coinsurer 'had a *legal obligation* to provide a defense or indemnity coverage for the claim or action *prior to the date of settlement.*'" *Mutual of Enumclaw Ins. v. USF Ins.*, 191 P.3d 866, 872-73 (Wash. 2008) (en banc) (emphases in original) (alterations and citation omitted); *see also Safeco Ins. of Am. v. Superior Court*, 44 Cal. Rptr. 3d

---

[4] *See also Hartford Cas. Ins. v. Trinity Universal Ins. of Kansas*, 158 F. Supp. 3d 1183, 1201 (D.N.M. 2015); Randall L. Smith & Fred A. Simpson, Excess Other Insurance Clauses and Contractual Indemnity Agreements Shifting an Entire Loss to a Particular Insurer, 30 T. Marshall L. Rev. 215, 219 (2004) (citing *United States Fire Ins. v. Stricklin*, 556 S.W.2d 575, 578 (Tex. Civ. App. 1977)).

841, 844-45 (Cal. Ct. App. 2006); David E. Bordon & Ellen B. Van Vechten, *Directors' and Officers' Liability Insurance*, *in* 4 Law and Practice of Insurance Coverage Litigation § 47:43, at 179 (David L. Leitner et al. eds., Supp. 2018).

Nationwide tries to work around this problem by reminding us that we reversed the circuit court's ruling. We did, to be sure. Nationwide, however, had voluntarily made the settlement payment *before* we reversed the circuit court's judgment. The truism, timing is everything, is true here as it is in so many other contexts. A judgment on appeal is the law of the case unless and until it is either stayed or suspended or, if neither, overruled by the higher court. Until then, the final judgment binds the litigants with the force of law — thereby creating legal rights and defenses that can be exercised at any time up until that judgment is set aside. The parties have a legal right, as well as a legal duty, to rely upon the lower court's judgment during this interim period. *See generally Aldous v. Darwin Nat'l Assurance Co.*, 851 F.3d 473, 486 (5th Cir. 2017) (holding that, "if an insurance company disputes coverage with its insured but nonetheless settles the action on the insured's behalf, there is no right to equitable reimbursement if the third party's claims are later determined to be uncovered by the policy"), *vacated in part on other grounds on reh'g*, 889 F.3d 798 (5th Cir. 2018).

Consider the situation in which a lower court orders a civil defendant to pay a monetary award, and then that defendant appeals. If the defendant pays the award without seeking a stay of the judgment, no action of the appellate court can undo that voluntary payment. To be sure, "the voluntary payment of a judgment deprives the payor of the right of appeal." *Citizens Bank & Tr. Co. v. Crewe Factory Sales Corp.*, 254 Va. 355, 355 (1997); *see also Carlucci v. Duck's Real Estate, Inc.*, 220 Va. 164, 166 (1979). Why? Because a judgment issued by a court of competent jurisdiction — whether the lowest court or the highest — defines the legal rights and liabilities of the litigant while that judgment remains in place. If litigants must obey such judgments on appeal, they may also *rely* upon them. *Cf. Bamberger v. Marsh USA, Inc.*, 699 Fed. Appx. 649, 651 (9th Cir. 2017) (stating that the insurer "could reasonably rely on the summary judgment ruling to justify its subsequent non-contribution" to the settlement).

In this case, a court of competent jurisdiction held that Erie occupied the status of an excess insurer. Nationwide did not request or obtain a stay of that judgment. As a matter of law, Erie had no duty to equitably contribute to Nationwide's settlement of the tort claim. At that time, Nationwide and Erie did not share a common obligation because the former had been

9

adjudicated to be a primary insurer and the latter an excess insurer. *See Safeco Ins. of Am.*, 44 Cal. Rptr. 3d at 844-45 (stating that the nonparticipating coinsurer must have "had a *legal obligation* . . . prior to [the date of settlement]" (alterations and emphasis in original) (citations omitted)); *see, e.g.*, *Mutual of Enumclaw Ins.*, 191 P.3d at 874 (rejecting a claimed "right to equitable contribution" because the defendant insurer "had no legal obligation to defend or indemnify [the insured] at the time of the settlement"). It was at the time that Nationwide paid the settlement — not when we issued our ruling on appeal nearly three years later — that the cause of action for equitable contribution either arose or did not arise.

I am not saying that the duty and breach sequence could never have concurrently occurred. If, for example, Nationwide were to have paid the settlement after we had vacated the circuit court's initial judgment, the date of Erie's breach would have occurred after the duty to contribute arose. Similarly, if Nationwide were to have paid the settlement proceeds before the circuit court adjudicated Nationwide as the sole, primary insurer, the circuit court could have awarded an equitable contribution claim (assuming timely notice and tender) because, at the time of the settlement, no judicial adjudication of the insurers' respective roles had taken place. *See, e.g.*, *American Family Mut. Ins. v. Regent Ins.*, 846 N.W.2d 170, 193-95 (Neb. 2014) (justifying an award of equitable contribution in part by analyzing on appeal which policies were primary and which were excess).

In sum, no "common obligation" concurrently existed in law at the time of Nationwide's voluntary settlement. At that time, an insurer previously adjudicated to be primary was asserting an equitable contribution claim against an insurer adjudicated to be excess.[5] Erie did not breach its duty to contribute because, at the time of the settlement, it had no such duty as a matter of law. Our reversal of the circuit court's final judgment did not create a duty ex post facto that had not existed at the time of the alleged breach.[6]

---

[5] *See Signal Cos. v. Harbor Ins.*, 612 P.2d 889, 894 (Cal. 1980) (stating that, "even though the claim against the insured may be for a sum in excess of the primary coverage, the primary insurer . . . may not seek contribution from the excess carrier even though its successful settlement . . . relieves the excess insurer from indemnifying the injured party").

[6] I am unconvinced by the majority's effort to distinguish *Allstate Insurance v. United Services Automobile Ass'n*, 249 Va. 9 (1995). *See ante* at 4-5. My concurrent-duty analysis, however, renders it unnecessary to address the condition-precedents argument advocated by Erie. I am similarly unpersuaded by the majority's reliance on *Williams v. Consolvo*, 237 Va. 608 (1989). *See ante* at 4. That case has nothing to do with equitable contribution. *Williams*

10

I respectfully dissent.

A Copy,

Teste:

Douglas B. Robelen, Clerk

---

addresses the situation where a party alleging negligence sought indemnity for an *illegitimate* payment made under a *mistake* of law. Our case, however, involves equitable contribution, which necessarily presupposes a *legitimate* payment made by one *unmistakably* legally liable to make the payment. Moreover, *Williams* says that a voluntary payor operating under a mistake of law cannot obtain relief without proving a "wholly inequitable result," a narrow exception supported by "decidedly few" Virginia cases. *Williams*, 237 Va. at 614 (citation omitted). Yet, even a cursory comparison of those "decidedly few" cases applying the wholly inequitable exception (*Williams* not being one of them) shows that Nationwide — a sophisticated insurance carrier represented by experienced legal counsel — can hardly claim that its decision to end the tort case with a purely voluntary settlement resulted in a wholly inequitable result. What possibly could be wholly inequitable (or, for that matter, inequitable at all) about an insurance company settling a case within its policy limits after being adjudicated to have sole coverage and having to pay the agreed-upon settlement amount?